**In re John Alexander COCHRANE, Debtor.**

**Bankruptcy No. 3–93–2056.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Jan. 30, 1995.

---

Michael J. Iannacone, St. Paul, MN, for debtor.

Garrett M. Vail, Minneapolis, MN, for Vaquero Investments, Inc.

William J. Fisher, Minneapolis, MN, for Tudor Oaks Condominium Project.

Brian F. Leonard, Minneapolis, MN, Trustee for the Estate.

## ORDER SUSTAINING OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPTION IN CERTAIN FLORIDA REAL ESTATE

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 (converted from Chapter 11) case came on before the Court on April 18, 1994, for a hearing on the objections of the Trustee and two other creditors to the Debtor's amended claims of exemption. Trustee Brian F. Leonard appeared on behalf of the bankruptcy estate. The Debtor appeared by his attorney, Michael J. Iannacone. Vaquero Investments, Inc. ("Vaquero") appeared by its attorney, Garrett M. Vail. Tudor Oaks Condominium Project appeared by its attorney, William J. Fisher. After counsel made various remarks, acknowledgements, and concessions, there remained only one asset as to which the Debtor's amended claim of exemptions was still in substantial controversy. As to that dispute, the Court directed post-hearing briefing on several threshold issues. Counsel timely completed that briefing, on June 1, 1994. Upon the record made at the hearing, the pre- and post-hearing briefs and pleadings, and the documentary record on which the parties consented to submit the threshold issues, the Court makes the following order.

### SUMMARY OF PROCEDURAL HISTORY

The Debtor filed a voluntary petition for reorganization under Chapter 11 on December 21, 1992.[1] On January 4, 1993, the Debt-

---

1. The Debtor filed the petition in the United States Bankruptcy Court for the Middle District of Florida. On motion of a scheduled creditor,

or filed his statements, schedules, and lists, including Schedules A, B, and C. On them, he listed an interest in a condominium unit located at 3660 Haldeman Creek Drive, Naples, Collier County, Florida, among the property he held as of his bankruptcy filing. Citing Florida state law, he claimed that interest exempt as his homestead.

Several creditors objected to a number of the Debtor's claims of exemption, including the one to the condominium unit. During the argument on those objections, the Debtor's counsel opined in passing that, in any event, the Debtor was entitled to exclude or exempt the condominium unit and certain other assets from his bankruptcy estate under the theory that he held his interest in them as a tenant by the entireties under Florida law.

On January 29, 1994, the Court sustained the creditors' objections.[2] In a companion order, the Court determined that thus far the Debtor had not formally claimed protection for any of his assets under the Florida state law of tenancy by the entireties, and directed him to serve and file an amended Schedule C to make that claim if he intended to do so. The Debtor then timely filed amended Schedules B and C, as well as another document that he titled "Alternative Schedule C, Property Claimed as Exempt."

In the meantime, the Court had converted this case to one under Chapter 7, on Vaquero's motion. The Chapter 7 Trustee, Tudor Oaks, and Vaquero all filed objections to various claims of exemption that the Debtor made for the first time in the amended schedules. These objections are the matters at bar. The only asset still in controversy under these objections is the same condominium unit in Naples, Florida that was the subject of the earlier sustained objections.

### FINDINGS OF FACT

The relevant facts are uncontroverted; for the most part, they are evidenced by documents.

that Court (Paskay, C.J.) ordered that the venue of the case be changed to this court.

2. The Debtor appealed from this decision. The District Court affirmed. *In re Cochrane,* CIV 4–

At all times relevant to the matter at bar, the Debtor was married to Carolyn A. Cochrane. Under a warranty deed dated November 30, 1988, the Debtor and his wife took title to the condominium unit. The warranty deed named "JOHN A. COCHRANE and CAROLYN A. COCHRANE, husband and wife, whose address is 270 Banyan Boulevard, Naples, FL 33940," as "GRANTEE." The status of the record holder of title to the property has not changed since this deed was filed in the Collier County, Florida land records on January 5, 1989.

On his original bankruptcy schedules the Debtor noted the following claims, among others:

1. A debt to Commercial State Bank, St. Paul, Minnesota, in the scheduled amount of $27,704.46, as to which the Debtor named Carolyn Cochrane as a codebtor. This debt was created under an instrument titled "Fixed Rate Consumer Note, Disclosure and Security Agreement," dated November 1, 1992. Both the Debtor and Carolyn Cochrane are noted as "Borrower" on the note, and both of them signed and acknowledged it.

2. A debt to Midway National Bank, St. Paul, Minnesota, in the scheduled amount of $479,000.00, as to which the Debtor named Carolyn Cochrane (among other individuals and entities) co-debtors. This debt is evidenced by a promissory note dated February 9, 1990, executed by the Debtor. In a separate instrument entitled "Guaranty," Carolyn A. Cochrane gave what she termed "an absolute guarantee" of the Debtor's obligation to Midway National Bank. In one of its several provisions, she waived

> any requirement that the [Midway National] Bank seek payment by the Debtor or any other person, such as another guarantor, of the amounts owing to the [Midway National] Bank as a condition precedent to bringing any action against me upon this guarantee, it being agreed

94–221, Order (D.Minn. August 4, 1994). The Debtor's appeal from the District Court's order is pending in the Eighth Circuit.

that any demand by the [Midway National] Bank for performance by the Debtor of the obligations herein guarantied, and failure of the Debtor to meet such obligations, shall, without further act, make me liable as herein set forth.[3]

For the first entry on his Schedule H, the Debtor listed "NON–FILING SPOUSE: Carolyn A. Cochrane," with the address of the Debtor's law office, in the column for "name and address of co-debtor." There were two corresponding entries in the schedule's column for "name and address of creditor," for "City of St. Paul/Department [sic] of Planning" and "Divine Scherzer & Brody." The sixth entry in the "co-debtor" column gave "Carolyn A. Cochrane," at the address of the Cochranes' former homestead in St. Paul, with "Commercial State Bank" as the corresponding entry in the 2 "creditor" column.

2 In addition, as of the commencement of this case the Debtor was liable on a promissory note in favor of FBS Mortgage Corporation dated June 27, 1989, in the original principal amount of $500,000.00, on which he and Carolyn A. Cochrane were signatories.

## DISCUSSION

The parties have raised a variety of issues, procedural and substantive. It is most appropriate to discuss the two procedural issues first.

## I. Whether Vaquero's Objection is Properly Before the Court

The Debtor filed his amended schedules on February 18, 1994. Pursuant to Loc. R.Bankr.P. (D.Minn.) 304(b), his counsel served them on a large number of creditors by a mailing made on the same date. This group included Vaquero's counsel of record for this case.

3. The prefatory paragraph to the Guaranty defined "the Debtor" as John A. Cochrane.

4. In pertinent part, this rule provides:

The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to [Fed.R.Bankr.P.]

On April 8, 1994, Vaquero's counsel filed his client's objections and served them on the Debtor's counsel by in-hand delivery. This was outside the 30–day period during which such objections had to be filed. Fed. R.Bankr.P. 4003(b).[4] Because Vaquero did not act by this deadline, "the property claimed as exempt on such list is exempt" as to Vaquero, 11 U.S.C. § 522(*l*), and the Court may not entertain its objections. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).[5] Vaquero's argument that the 30–day period commenced with the March 24, 1994 meeting of creditors in the converted case is without merit; since the subject of Vaquero's objection was an amendment to a previously-filed schedule, the plain language of the rule dictates that the period commenced with the filing of that amendment.

## II. Whether the Debtor Can Exempt the Condominium Unit Under the Minnesota Homestead Laws

During the earlier proceedings on the Debtor's claim of exemptions under Florida law, his counsel remarked in passing on alternative theories under which his client would attempt to protect the condominium unit from the claims of the bankruptcy estate if he lost in the proceeding then pending. After that expression of intent, the Court recognized that extended litigation on successive claims of exemption would impose significant cost on opposing parties, and might give the Debtor unwarranted advantage in settlement negotiations. To ripen the issue as to the Debtor's rights under the tenancy-by-the-entireties theory, the Court entered an order on January 28, 1994. That order required the Debtor to formally raise this claim by an amended Schedule C, and further provided

that if the Debtor fails to timely serve and file an amended Schedule C in accordance

2003(a) or the filing of any amendment to the list or supplemental schedules ...

5. The only real effect of this conclusion is to deny Vaquero the right to participate in any further proceedings on the tenancy-by-the-entireties issue. All of the theories that its counsel briefed in support of its objection were previously presented by counsel for the Trustee and by Tudor Oaks.

..., none of his assets shall be excluded or exempted from his bankruptcy estate under the theory that his interest in them is that of a tenant by the entireties.

In a companion order, the Court directed [t]hat, no later than February 18, 1994, the Debtor shall file an amended Schedule C, setting forth his final election as to his claims of exclusion or exemption in all of this assets. For the remaining pendency of this bankruptcy case, the Debtor shall have no right to file a further amended Schedule C.

This, of course, curtailed the latitude otherwise afforded by FED.R.BANKR.P. 1009(a) [6]. Earlier in that order, the rationale for this action had been given:

... it also appears that the Debtor is willing to abandon previously-asserted claims of exemption to various ... assets. To evidence the Debtor's *final* intention as to all of his assets, he should be required to file an amended Schedule C. The Debtor, however, should not be allowed to play an extended game of "hide the ball"—that is, his broad right of amendment ... should be restricted so as to prevent him from reclaiming particular personalty or realty as exempt if he is unable to establish that he is entitled to a tenancy-by-the-entireties immunity for such assets.

(Emphasis added).

In response to this order, the Debtor filed an amended Schedule C and an appended document entitled "Alternative Schedule C." In the latter, he purported to claim the benefit of various Minnesota state exemption laws, including that of MINN.STAT. § 510.01 for the condominium unit. A typewritten, unsigned, and unattributed statement is appended to this "Alternative Schedule C":

2 The Bankruptcy Court has entered an Order dated January 28, 1994 which prohibits the debtor from further amendments to the debtor's Schedule C. The debtor is concerned that in the event the Bankruptcy Court were to rule that Debtor has not properly invoked or claimed the exemptions available to him under the laws of the State of Florida and were to hold that the debtor could not claim any property exempt under the laws of the State of Florida, then, under the Court's Order barring further amendments to the debtor's Schedule C, the debtor would be without right, otherwise provided by Bankruptcy Rule 1009, to amend his Schedule C and would be left without any state law under which to claim his property as exempt.

Attached hereto and identified a "Alternative Schedule C, Property Claimed as Exempt", is Debtor's Property Claimed as Exempt under the laws of the State of Minnesota. In the event the Bankruptcy Court were to rule that debtor could not claim any exemption under the laws of Florida then the debtor claims the property identified on "Alternative Schedule C, Property Claimed as Exempt", under the laws of the State of Minnesota.

This tactic cannot give the Debtor the protection of the Minnesota homestead exemption for the condominium unit. There are three reasons.

■ First, this is just the sort of maneuvering that the Court sought to prohibit in the January 28, 1994 orders. In their letter and spirit, they mandated the Debtor to choose one last theory of exemptions, against which the competing claims to his assets would be determined with finality. As a clear violation of that mandate,[7] the Alternative Schedule C should be stricken.

■ Second, there is no basis under the Federal Rules of Bankruptcy Procedure for proposing an "alternative" claim of exemptions at the same time as one asserts a "main" claim in a Schedule C. The underlying though could be tagged as, "well, if you don't like that theory, how do you like this

---

6. In pertinent part, this rule provides that "[a] ... schedule ... may be amended by the debtor as a matter of course at any time before the case is closed."

7. Though the Debtor's appeal purported to be from the orders that incorporated these procedural dictates, the District Court did not address the propriety of them in its decision. The provision, then, would appear to be the law of the case.

one?" This little dodge, however, runs entirely contrary to the clear purpose of FED. R.BANKR.P. 2007, 4003(a), and 1009: to provide a procedural framework for the raising of exemption issues one at a time, and not two-or-more at a time. The vehicle for this assertion of exemption rights is just not countenanced under the applicable rules or the prescribed forms, and the Debtor is out of bounds for using it.

■ Finally, and in any event, the Debtor simply is not statutorily entitled to this exemption. One can even set aside the strong possibility that this claim of exemption is constitutionally prohibited,[8] and still reach the same result: the Debtor simply cannot satisfy the requisites for homestead protection under Minnesota law.

■ MINN.STAT. § 510.01 [9] and its predecessors have all required a showing of both ownership and occupancy as predicate elements of the exemption.

> Actual occupancy ... is the prominent idea associated with the word "homestead." ... [T]he term "actual occupancy" must receive a reasonable construction, and is not to be understood as requiring constant personal presence ... But, even with this reasonable construction there must be actual and continued occupation of and residence upon the premises in order to constitute a homestead ..."

*Clark v. Dewey*, 71 Minn. 108, 110, 73 N.W. 639, 639–40 (1898). In construing the homestead statute, the courts should apply the ordinary and customary understanding of the key word: "the place of residence of the family." *Tillotson v. Millard*, 7 Minn. 419, 422–23 (1862). From time to time, the Minnesota Supreme Court has ruled in a manner so as to avoid giving the strictest possible construction to this test. *E.g., Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440 (1964). Even then, however, it has emphasized that the trial court must still find "a community connection [between the debtor and the real estate in question] of such significance as give reason to believe that the preservation of that connection will in the long run make the debtor and his family better able to fulfill their social obligation to be self-sustaining." *Denzer v. Prendergast*, 267 Minn. at 216, 126 N.W.2d at 444.

■ In the January 28, 1994 order that denied the Debtor's claimed homestead exemption under Florida statute, the Court made findings on the fact issues of occupancy and actual residence: as of the commencement of this case, the Debtor neither "actually resided" in the condominium unit in Florida, nor had an actual intention to currently maintain a permanent place of residence in it. Over the year preceding his bankruptcy filing, he had physically stayed there no more than a total of three to four weeks, and he had never formed nor carried out an intent to permanently sever his lifelong ties to the St. Paul, Minnesota area in favor of making the condominium unit his and his family's "home place." The doctrine of collateral estoppel, or "issue preclusion" now bars him from relitigating these fact issues in the context of

---

**8.** This probable bar is inherent in the nature of our federal system, at one of its most basic levels: the limits on the ability of a state to exercise jurisdiction over assets that are not located on its very soil. Debtor proposes to shelter certain real estate from the claims of his creditors, by invoking the law of a state that is halfway across the continent from the real estate. Though the strength of the proposition has diminished over the Twentieth Century, each state in the United States still is in many respects an independent republic, insofar as the legal regulation of contractual relationships is concerned. When it comes to the enforcement of creditors' claims against real estate, the regulatory power of a legislature really goes no further than its own state's boundaries. The state of Minnesota has no business dictating to Florida judgment creditors, as to how they may enforce their claims against assets that are situated in Florida. This limitation, imposed as it is by the basic nature of federalism, cannot be unseated merely because a subject debtor happens to be involved in a bankruptcy case in federal court. The Debtor's "alternative" claim of Minnesota state exemptions elides this bedrock principle. For some reason, none of his opponents overtly called him on the point.

**9.** In pertinent part, this statute provides:

> The house *owned and occupied by a debtor as the debtor's dwelling place,* together with the land upon which it is situated ... shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing ... (Emphasis added.)

the dispute at bar. *Abbott Bank, Hemingford v. Armstrong,* 44 F.3d 665, 667 (8th Cir.1995); *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983) (collateral estoppel bars relitigation in bankruptcy proceeding of fact issues actually litigated and decided in final order in prior proceeding in the same bankruptcy case, where respective issues are identical and where finding on issue was essential to earlier holding). *See also In re Miera,* 926 F.2d 741, 743 (8th Cir.1991) (existence of pre-bankruptcy adjudication state court can trigger collateral estoppel in proceeding in bankruptcy case).[10]

 The specific words applied by the Minnesota and Florida courts vary a bit, but the underlying thought is identical: a homestead is real estate where one places oneself into actual physical occupancy, with a permanent personal commitment to the place and its community. It has been established that neither the Debtor nor any member of his family actually "occupied" the condominium unit in this sense as of the commencement of this case. The point is the same, whether it is contemplated by either Florida or Minnesota law. The Debtor is bound by the earlier findings. As a result, he is not entitled to claim the condominium unit as exempt pursuant to MINN.STAT. § 510.01—even if this claim of exemption is properly before the Court, and even if it is legally available to the real estate itself.

---

**10.** The fact that the earlier adjudication is still on appeal does not deprive it of finality for the purposes of the application of the preclusion doctrines here: the Debtor never sought or obtained a stay pending appeal. *E.g., Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941); *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988); *Blinder, Robinson & Co., Inc. v. S.E.C.,* 837 F.2d 1099, 1104 n. 6 (D.C.Cir.1988), *cert. den.,* 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988); *Southern Pacific Telecommunications Co. v. American Tel. & Tel. Co.,* 740 F.2d 1011, 1018 (D.C.Cir.1984).

**11.** When it enacted the Bankruptcy Code of 1978, Congress gave state governments the right to "opt out" of the federal exemption scheme in bankruptcy cases. *See* 11 U.S.C. § 522(b)(1) (authorizing use of exemptions specified under 11 U.S.C. § 522(d), "unless the State law that is applicable to the debtor ... specifically does not so authorize"). The Florida state legislature has exercised this right. FLA.STAT.ANN. § 222.20; *In re Wilson,* 694 F.2d 236, 237 n. 1 (11th Cir.1982);

---

## III. Whether the Debtor's Alleged Lack of Florida Domicile Deprives Him of the Protection of the Florida Law of Tenancy by the Entireties

The right of a debtor in bankruptcy to exempt property from the estate is granted by the Bankruptcy Code via several different options. When the debtor either lacks the right to claim the "federal law" exemptions of 11 U.S.C. § 522(d)[11], or chooses not to claim them, 11 U.S.C. § 522(b)(2)[12] identifies the law governing his exemption rights. It is under this provision that the Debtor invokes Florida law as the source of his exemption rights, including the claim at bar. The Debtor continues to assert that he may do so by virtue of some sort of legal nexus with that state.

 Contrary to Tudor Oaks's and the Trustee's arguments, the Court's earlier finding that the Debtor did not reside in the condominium unit do not preclude him from now claiming the protections of the Florida law of tenancy by the entireties pursuant to § 522(b)(2)(B). This issue is resolved by the statute on its face.

 The use of the conjunction "and" between the two subdivisions of § 522(b)(2) shows that Congress intended to allow debtors to cumulate the protections that might be available under the two different sources de-

---

*In re Gardner,* 118 B.R. 860, 862 (Bankr.M.D.Fla. 1990).

**12.** In pertinent part, this statute provides that

(b) ... an individual debtor may exempt from property of the estate ...

. . . . .

(2)(A) any property that is exempt under Federal law, other than [11 U.S.C. § 522](d) ... or State or local law that is applicable on the date of the filing of the [bankruptcy] petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; *and*

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

(Emphasis added.)

scribed in them. Of the two sources, only one is keyed into the situs of the debtor's pre-petition domicile—that under § 522(b)(2)(A), which includes federal statutes outside the Bankruptcy Code, and state or local statute, judicial decision, or other "law." The other one—the one that the Debtor invokes in this case—is not so limited; § 522(b)(2)(B) contains no provision limiting the governing "applicable nonbankruptcy law" to that of the debtor's state of domicile. In wording § 522(b)(2)(B) this way, Congress clearly chose to identify the protected class of property by two characteristics: its legal form of ownership, and the existence of· protection "under applicable nonbankruptcy law" for assets held in such forms of ownership. Insofar as the latter characteristic is concerned, the situs of the debtor's domicile is irrelevant. It indeed seems to be just as the Debtor's counsel argues: the situs of the asset that is held by a debtor in bankruptcy as a tenant by the entireties is the sole determinant of whether § 522(b)(2)(B) can protect it from the claims of the bankruptcy estate.

 Since the real estate at issue is located within the state of Florida, and Florida law can protect property held in a tenancy by the entireties from the claims of at least certain of the owners' creditors, the possibility that the Debtor was not "domiciled" in Florida as of the commencement of this case does not in itself defeat his right to assert that protection.[13]

## IV. Whether the Existence of Joint Creditors Makes the Condominium Unit Accessible to the Estate, Notwithstanding the Debtor's Form of Ownership

 Under Florida law, the historic basis for the estate of tenancy by the entire-

ties was the assumed incapacity of married women to hold property individually. *First Nat'l Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777, 779 (Fla.1971). Over time,

> subsequent reconsideration of doctrine ... led to development of the view that [the supporting theory behind the tenancy] ought to be based upon the intention of the parties, rather than upon any assumed incapacity of married women; and further, that concurrently, it ought to be based upon the simple fact that those who were married were to be considered as a unit with both taking *per tout et non per my,* and with neither taking as a separate individual.

*Id.* at 780. In the context of debtor-creditor relations, the consequence of this precept is that property held in a tenancy by the entireties may not be reached by creditors whose claims run against only one of the individuals in the marriage. *Sharp v. Hamilton,* 520 So.2d 9, 10 (Fla.1988); *Meyer v. Faust,* 83 So.2d 847, 848 (Fla.1955); *Hunt v. Covington,* 145 Fla. 706, 200 So. 76, 77 (1941); *Miller v. Rosenthal,* 510 So.2d 1127, 1128 (Fla.Ct.App.1987). The nature of the tenancy does not shield the asset against the claims of creditors to whom both spouses are jointly liable, however. *Stanley v. Powers,* 123 Fla. 359, 166 So. 843, 846 (1936).

 As of the commencement of this case, the Debtor and his wife had at least five creditors to whom they were jointly obligated.[14] The condominium unit, then, does not enjoy an unqualified and general protection in this case.[15]

The Debtor poses an additional question, however: does the condominium unit none-

---

13. This conclusion allows the Court to avoid the other issue that is posed by the objectors' argument: does the "domicile" contemplated by § 522(b)(2)(A) equate to the actual residence, coupled with intention, that is required for homestead protection under Florida law?

14. These creditors were identified in the findings *supra* at pp. 1015–16. Under Florida law, the absolute nature of Carolyn Cochrane's guarantee of the Midway National Bank debt established their liability as joint and several. FLA.STAT. § 46.041(1); *Vernon v. Service Trucking, Inc.,* 565

So.2d 905, 906 (Fla.Ct.App.1990). In his posthearing memorandum, the Debtor's counsel argued at some length that the burden of establishing the existence of joint pre-petition creditors was on the objectors. Since the Debtor scheduled all of the five-plus joint claims without qualifying them as disputed, there is nothing to quibble about as to their existence.

15. The Debtor argues at length that the mere existence of a joint *claim* is not sufficient to crack the entireties immunity, but that the holder of such a claim must also have had it reduced to

theless have a narrower protection, from particular types of creditors? Outside bankruptcy, this question is easy to answer: joint creditors can levy against entireties property[16] that is not otherwise exempt under law, but sole creditors—that is, those whose claims run against only one of the parties to the marriage—can not. In bankruptcy, however, the context is one of a *collective* proceeding, where the trustee is mandated to act on behalf of *all* creditors. This different frame of reference makes the question of access to entireties property more problematic.

■ On this issue, the federal courts in the several districts within Florida have differed widely as to both theory and result. *See In re Pepenella*, 103 B.R. 299, 302 (M.D.Fla.1988) (existence of joint creditors destroys "exemption" for entireties property, but trustee may distribute proceeds of debtor's interest only to the joint creditors); *In re Anderson*, 132 B.R. at 659–60 (existence of joint judgment creditor defeats "exemption"; trustee's subsequent sale of both tenants' interests pursuant to 11 U.S.C. § 363(h) terminates entireties tenancy and creates tenancy in common, so proceeds debtor's interest may be distributed to all of debtor's creditors); *In re Geoghegan*, 101 B.R. 329, 330–31 (Bankr.M.D.Fla.1989) (terming entireties protection an "immunity"; otherwise using same rationale as *Anderson* court as to trustee's claim to and administration of debtor's interest, but holding that proceeds may be distributed only to joint creditors); *In re Boyd*, 121 B.R. 622, 625 (Bankr.N.D.Fla. 1989) (summarily quoting *Pepenella* and *Geoghegan* to allow trustee access to debtor's interest in entireties property, at least up to a value equal to total amount of joint claims, but allowing distribution of proceeds to all creditors); *In re Amici*, 99 B.R. 100, 102 (Bankr.M.D.Fla.1989) (protection for entireties property is "immunity" rather than the "exemption" contemplated by § 522(b)(2)(B); existence of joint claims wholly defeats immunity, and allows trustee to administer full value of debtor's interest for benefit of all creditors). Needless to say, the respective sides in this case have argued the several extant cases, each to their own best advantage, and generally as if this were an issue as to which this Court were bound by the pronouncement of any federal judge sitting within Florida.

Ultimately, however, this issue is one of the construction of the basic state law in the context of bankruptcy estate administration, and this Court is bound by direct precedent: *In re Garner*, 952 F.2d 232 (8th Cir.1991). In *Garner*, a debtor claimed the protection afforded entireties property under Missouri law. In all material respects, that protection is identical to that given by Florida law: entireties property is protected from claims of creditors whose rights lie against only one spouse, 952 F.2d at 234–35, but where the spouses "have jointly acted to burden the property," such a joint creditor may get access to the property to satisfy its claim, 952

judgment in a nonbankruptcy forum so as to be entitled to the issuance of collection process. There is no proof of record that any of the five scheduled joint claimants held this status as of the commencement of this case. As authority for this proposition, however, counsel only cites a Bankruptcy Court decision—*In re Anderson*, 132 B.R. 657, 660–61 (Bankr.M.D.Fla.1991). (He also uses a terse quote from a decision of the Florida District Court of Appeals—*Teardo v. Teardo*, 461 So.2d 276 (Fla.Ct.App.1985). This citation is wholly off-point, being to a one-paragraph decision that has nothing to do with the present case, substantively or procedurally.) The *Anderson* court made its conclusion in a summary fashion, without cited authority and with no rationale. It is simply wrong. One of the major goals of bankruptcy is to promote an orderly, ratable, and prioritized distribution of nonexempt assets. Many provisions of the Code give bankruptcy trustees and debtors the right to undo the legal consequences of the pre-petition attachment of statutory or judgment liens. *See, e.g.,* 11 U.S.C. §§ 510(c); 522(f)(1); 545; and 547(b). Judgment creditors almost always have claims that were unsecured in the inception, and become secured only because they went to law earlier than others similarly-situated. The whole scheme of the Code is designed to relegate such creditors to a parity with others who had the same original bargain with the debtor as to their secured status. It would undercut this philosophy—and, possibly, some of the cited provisions—to impose the prerequisite of a docketed joint-creditor judgment that the *Anderson* court created, seemingly out of whole cloth.

16. For the sake of brevity, the concept of property held in a tenancy by the entireties henceforth will be termed "entireties property."

F.2d at 235. Adopting other circuits' holdings that 11 U.S.C. § 541(a)(1)[17] brings entireties property into the estate, 952 F.2d at 234, the Eighth Circuit concluded that the Missouri Supreme Court would countenance access by a trustee in bankruptcy to the debtor's interest in entireties property, as long as there were joint creditors, 952 F.2d at 235. It noted that

> [t]his conclusion accords with Congress' [sic] intent to bring all of a bankrupt individual's property interests into the bankruptcy estate and then equitably protect the nonbankrupt individual's interest in the property.

*Id.* (legislative-history citations omitted). This holding clearly contemplates that, after the trustee liquidates a debtor's interest in entireties property by using 11 U.S.C. § 363(h)[18] or some other means, that value is part of the general bankruptcy estate and may be distributed to all creditors.

■ Because the Debtor had several creditors as to whom he was jointly liable with his wife, then, the status of his ownership interest in the condominium unit does not give him an exemption for that interest from the bankruptcy estate; nor does that status exclude his interest from the estate by "immunity" or otherwise.

---

17. This statute provides, in pertinent part, that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

18. In pertinent part, this statute provides:
 ... the trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
 (1) partition in kind of such property among the estate and such co-owners is impracticable;
 (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; [and]
 (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners ...
 . . . . .

19. The Trustee and Tudor Oaks also had argued that the Debtor and his wife did not really hold

## CONCLUSION

■ This disposes of all of the issues that had to be addressed.[19] Tudor Oaks and the Trustee are entitled to an order in their favor, and the Debtor is not entitled to retain his interest in the condominium unit against the claims of the bankruptcy estate.

## ORDER

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. The Debtor's interest in his Naples, Florida condominium unit is not exempt, immune, or excluded from his bankruptcy estate, under the Florida law of tenancy by the entireties.

2. The Debtor's interest in his Naples, Florida condominium unit is an asset of the bankruptcy estate, which the Trustee may proceed to administer.

---

the condominium unit in a valid tenancy by the entireties. In response to this, the Debtor had correctly maintained that under Florida law the creation of a tenancy by the entireties in real estate is presumed where the deed names spouses, as husband and wife, as grantees, and no express language as to the nature of the estate is required. *In re Estate of Silvian,* 347 So.2d 632, 633–34 (Fla.Ct.App.1977). However, to rebut this presumption, "fraud may be proven." *First Nat'l Bank of Leesburg v. Hector Supply Co.,* 254 So.2d at 780. During the earlier evidentiary hearing in this case, much came out regarding the various transfers in forms of real estate ownership between the Debtor and his wife over several years, including the time in which he was embroiled in litigation with Tudor Oaks that resulted in a very substantial judgment against him. This was enough to make out a triable fact issue on the *bona fides* of the Debtor's creation and assertion of a tenancy by the entireties. Because the Debtor's right to claim entireties protection for the condominium unit has been resolved as a matter of law at an earlier stage in the analysis, this issue need not be reached.