**In re Bradley DRENTTEL, Mary Drenttel, Debtors.**

**No. 03–34969.**

United States Bankruptcy Court, D. Minnesota.

Dec. 4, 2003.

Barbara J. May, Arden Hills, MN, for Debtors.

## ORDER SUSTAINING OBJECTION TO CLAIMED EXEMPTION

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the Chapter 7 Trustee's objection to the Debtors' claimed homestead exemption. A hearing was held on September 24, 2003.

Mary Jo Jensen Carter, the Trustee of the Debtors' bankruptcy estate, appeared pro se, and Barbara J. May appeared on behalf of the Debtors. At the conclusion of the hearing, the Court allowed ten days therefrom for supplemental briefing. The Trustee filed a supplemental brief on October 3, 2003. On October 6, 2003, the Court took the matter under advisement. Based on all the files, records and proceedings herein, the Court now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. Factual Background

The relevant facts of this case are not in dispute. Prior to filing for relief under Chapter 7, Bradley and Mary Drenttel sold their home in Minnesota. On June 19, 2003, the Drenttels purchased real property in Arizona located at 5449 North Bremont Way, Prescott Valley (the Arizona property). The Drenttels used some or all of the proceeds from the sale of their Minnesota home to purchase the Arizona home for the amount of $181,682.00. The Drenttels filed this bankruptcy case in Minnesota on July 17, 2003. At the time of filing, the Drenttels resided at the Arizona property. According to the Drenttels' schedules, the Arizona property is worth $181,682 and is unencumbered.

In their Chapter 7 bankruptcy petition and schedules, the Drenttels claimed their interest in the Arizona property as exempt under Minn.Stat. § 510.01 and 510.02. Because the Drenttels lived in Arizona just over one month prior to filing for bankruptcy relief, there is no dispute that their choice of Minnesota exemptions, as opposed to the Arizona exemptions, is appropriate pursuant to 11 U.S.C. § 522(b)(2)(A).[1] However, the Trustee

---

1. Section 522(b)(2)(A) provides, in pertinent part: (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in

raised the present objection to the exemption of the Arizona property on the argument that the Minnesota exemption statutes may not be applied to real property beyond the territorial boundaries of the state of Minnesota. The Drenttels contend that the Minnesota statute does not proscribe extraterritorial effect of the exemption and that recent caselaw and public policy support such an interpretation. For the reasons set forth below, the Court will follow the longstanding majority position, and the policy considerations underlying it, of territorially limited effect of state exemption statutes.

## II. Discussion

 "The homestead exemption and its limitations relevant to this controversy are contained in Minn.Stat. §§ 510.01 and 510.02, and draw their validity and force from Minn. Const. art. 1, § 12." *See O'Brien v. Heggen*, 705 F.2d 1001, 1003 (8th Cir.1983).[2] "The scope of a state-created exemption is determined by state law." *See Jensen v. Dietz (In re Sholdan)*, 217 F.3d 1006, 1008 (8th Cir.2000), citing *Panuska v. Johnson (In re Johnson)*, 880 F.2d 78, 79 (8th Cir.1989).

The Minnesota exemption statutes provide:

either paragraph (1) or, in the alternative, paragraph (2) of this subsection. (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, *or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place. See* 11 U.S.C. § 522(b)(2)(A) (emphasis added). Accordingly, the Drenttels could choose either the Federal or the Minnesota exemptions, but not the Arizona exemptions.

2. Section 12 of the Minnesota Constitution provides: Imprisonment for debt; property exemption: No person shall be imprisoned

510.01. Homestead defined; exempt; exception

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.

*See* MN ST § 510.01.

510.02. Area and value; how limited

The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one-half of an acre. The value of the homestead exemption, whether the exemption is claimed jointly or individually, may not

for debt in this state, but this shall not prevent the legislature from providing for imprisonment, or holding to bail, persons charged with fraud in contracting said debt. A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. Provided, however, that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair or improvement of the same, and provided further, that such liability to seizure and sale shall also extend to all real property for any debt to any laborer or servant for labor or service performed. *See* MN CONST Art. 1, § 12.

exceed $200,000 or, if the homestead is used primarily for agricultural purposes, $500,000, exclusive of the limitations set forth in section 510.05.

*See* MN ST § 510.02.

The Court of Appeals for the Eighth Circuit has apparently not had occasion to consider the specific question of the extraterritorial effect, if any, of homestead exemption statutes promulgated by the states within the Circuit. Similarly, the Minnesota case law on this subject is scant and not directly on point.[3] Nevertheless, there is a body of authority, and indeed a split of opinion.

The Drenttels urge the Court to follow the decision of the Ninth Circuit Court of Appeals in *Arrol v. Broach (In re Arrol)*, 170 F.3d 934 (9th Cir.1999). In *Arrol,* the facts are closely analogous to the Drenttels' situation. The debtor left Michigan and moved to California in 1994. He did not sell his Michigan home, however, and returned to it in November 1996. In January, 1997, with more than half of the prior 180 days domiciled in California, the debtor properly filed his bankruptcy petition in California. Likewise, section 522(b)(2)(A) provided that the debtor's choice of California exemptions was permissible. The trustee argued that California's homestead exemption should not be given extraterritorial effect. The Court

disagreed, and held that California's exemption statute applied extraterritorially to the debtor's homestead property in Michigan. *Arrol,* 170 F.3d at 936–937.

The Court acknowledged "the general rule" that "state homestead laws have no extraterritorial force and are only available to residents of the state." *Id.* at 936. Nevertheless, the Court reasoned that California's exemption statute included no express language limiting the homestead exemption to dwellings within California. *Id.*

The Court also rejected the trustee's policy based arguments. The Court did not disagree as to the nature of the policy considerations underlying the California exemption statute. Rather, the Court found the legislative purposes of the exemption entirely consistent with the rule of interpreting exemption statutes liberally and specifically with extraterritorial effect. *Id.* at 936–937. The legislative goal of providing "a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will" is a goal that "exists independently from state boundary lines." *Id.* at 936. Comparing the homestead exemption to California's automobile exemption, which applies regardless of whether the vehicle is "physically outside

---

**3.** There are, however, cases that seem to establish a tradition of supporting territorial integrity and the concomitant restricted jurisdiction of state statutes, especially with respect to real property within the state. *See,* e.g., *Renlund v. Commodore Min. Co.,* 89 Minn. 41, 44, 93 N.W. 1057, 1058 (Minn. 1903) (citing the general principal of construction that statutory law has no extraterritorial force, for the reason that a legislative body is presumed to legislate only for the persons within the territorial limits of its own government); *MacDonald v. First Nat. Bank of Corunna,* 47 Minn. 67, 49 N.W. 395 (Minn. 1891) (holding Minnesota state "insolvent law" effectual as to non-residents of the state, but only so far as to control the disposition of property within the state's jurisdiction). Some Minnesota state statutes specifically legislate extraterritorial effect under certain circumstances, such as state workers' compensation law. *See* MN ST § 176.041. *But see, Metro Milwaukee Auto Auction v. Coulson,* 604 N.W.2d 111, (Minn.Ct.App.2000) (stating in its plain-meaning statutory analysis that had the legislature intended to impose a geographical limitation or otherwise restrict the effect of a state motor vehicle dealer bond statute, it could have so stated).

of California on the date the bankruptcy petition is filed," the Court concluded that just as the automobile exemption "reflects a concern for preserving a need for basic transportation," likewise "the homestead exemption reflects a concern for preserving a need for basic housing." *Id.* at 936–937. "Both exemptions address concerns that transcend state boundaries." *Id.* at 937.

Similarly, in the case of *In re Stratton*, the bankruptcy court for the District of Oregon addressed the issue of "whether Oregon's homestead exemption should be given extraterritorial effect." *See In re Stratton*, 269 B.R. 716, 717 (Bankr.D.Or. 2001). The court noted that "[t]here is ample authority to support the trustee's position" that the homestead exemption cannot be applied to real property located outside the State of Oregon, "which, in fact, appears to be the majority view." *Id.*, citing *In re Halpin*, 1994 WL 594199 (Bankr.D.Idaho 1994); *In re Sipka*, 149 B.R. 181 (D.Kan.1992); *In re Peters*, 91 B.R. 401 (Bankr.W.D.Tex.1988); *Cherokee Const. Co. v. Harris*, 92 Ark. 260, 122 S.W. 485 (1909); *Rogers v. Raisor*, 60 Iowa 355, 14 N.W. 317 (1882); *State Bank of Eagle Grove v. Dougherty*, 167 Mo. 1, 66 S.W. 932 (1902); *In re Owings*, 140 F. 739 (E.D.N.C.1905); 40 Am.Jur.2d Homestead § 14 (1999).

Nevertheless, the court in *Stratton* followed the *Arrol* approach to interpreting the exemption statute. "Like California's homestead exemption statute, Oregon's homestead exemption is silent as to its extraterritorial effect and has been so since its enactment in 1893." *Stratton*, 269 B.R. at 718. The *Stratton* court rejected the argument that extraterritorial application of state exemption laws would "lead to forum shopping and unfair interference with debtor/creditor relationships," and agreed that the policy goals underlying the

Oregon exemption statute also "exist independently from state boundary lines." *Id.* at 717–718. "[T]he purpose of the homestead exemption, 'is not only to insure indigent individuals the comforts of home, but also to protect the general economic welfare of all citizens, creditors and debtors alike, by promoting the stability and security of our society.' " *Id.* at 718, citing *Wilkinson v. Carpenter*, 277 Or. 557, 565, 561 P.2d 607, 611 (1977).

The Minnesota homestead exemption statute, like the California and Oregon homestead exemption statutes, is silent regarding extraterritorial effect. However, this Court does not find that element to be dispositive of the question. The conclusion reached by the majority of courts to have considered the issue of the extraterritoriality of state exemption statutes, some of them courts in the Eighth Circuit, is based upon the notion of individual state sovereignty, to the extent it still exists and meaningfully operates, and in recognition of each state's unique interests and priorities.

More than a century ago the Supreme Court of Iowa held that "[t]he laws of each state ... apply only to homesteads acquired and held under its own laws, and within its territorial jurisdiction." *See Rogers v. Raisor*, 60 Iowa 355, 14 N.W. 317, 318 (Iowa 1882). "The laws of neither state can have any extraterritorial force or application." *Id.* The court included proceeds from the sale of a homestead in the analysis: "It follows that the fund arising from the sale of the Iowa homestead, upon being carried into Missouri, lost the distinctive character of being the proceeds of a sale of a homestead." *Id.* Another old case out of Missouri, still good law, arrived at the same conclusion. "The right of homestead is purely a creature of statute, and, while such a right has been created in statute in all or most of the states, such

statutes can have no extraterritorial force, and must be construed to apply to homesteads within the state of enactment." *See State Bank of Eagle Grove v. Dougherty,* 167 Mo. 1, 66 S.W. 932 (1902).

More recently, the bankruptcy and district courts in the District of Kansas have had occasion to consider this issue. In 1992, the court would not extend the Kansas homestead exemption extraterritorially. "[T]he [Kansas] homestead exemption extends to the proceeds of the sale of a Kansas homestead where the debtor intends to invest such proceeds in another Kansas homestead." *See In re Sipka,* 149 B.R. 181, 182 (D.Kan.1992). The court in *Sipka* agreed with the majority view that "the proceeds of a sale of a homestead in another state lose their exempt status when removed from the state," and held that "[t]he Kansas exemptions have no extraterritorial force." *Id.* at 182–183. In *Sipka,* the debtor had moved to Kansas from Michigan following a division by a Michigan court of proceeds from a Michigan homestead. The court explained:

> Extending the homestead exemption to cover proceeds rests on an equitable fiction. *Smith v. Gore,* 23 Kan. 488, 490 (1880). The fiction is that the debtor still has a homestead, but its character has temporarily changed. In the case at bar, however, Kansas would not have recognized an exemption for the debtor's Michigan homestead in the first instance. Accordingly, the transfer of the proceeds resulting from the involuntary sale of the homestead in Michigan does not render the proceeds exempt under Kansas law.

*Sipka,* 149 B.R. at 183.

Similarly, the debtors in *Ginther* claimed the Kansas homestead exemption in proceeds from a Kansas homestead reinvested in real property in Colorado. *See In re Ginther,* 282 B.R. 16 (Bankr.D.Kan.

2002). The bankruptcy court agreed with the "debtors that neither the constitutional nor statutory exemption explicitly limits the homestead exemption to homesteads in Kansas." *Id.* at 19. However, the court rejected the "debtors' argument that, in the absence of this express limitation in the Kansas constitution and statute and the proceeds rule as adopted by Kansas case law, the Kansas Legislature intended to protect homesteads located outside state boundaries." *Id.* "[T]he fact that the provision does not expressly say that the constitution is made for Kansas is not a good basis for an inference that the framers were attempting to regulate and protect the municipalities of other states..." *Id.,* citing *State v. Holcomb,* 85 Kan. 178, 181, 116 P. 251 (1911). The court also cited an 1884 case with approval, *Burlington & M.R.R. in Neb. v. Thompson,* 31 Kan. 180, 1 P. 622 (1884). "We think these propositions are sound: The laws of a state have no extraterritorial force. This as a general proposition is unquestioned, and includes within its scope exemption as well as other laws." *Id.* The bankruptcy court in *Ginther* did not expressly reject the decision in *Arrol;* rather, it relied on the binding precedent of the Kansas Supreme Court, and also cited *Sipka* with approval.

Another jurisdiction reaching back to early cases to answer this apparently modern question is Texas. In a 1924 case, the Texas Court of Civil Appeals explained:

> When the Legislature provided that the proceeds of the voluntary sale of "the homestead" should be exempt, we think it, by necessary implication, referred to "the homestead" as otherwise defined— at first in the same sentence of the enactment and later by the preceding section of the statute. This definition of "the homestead" we think also by necessary implication refers to a *homestead in Texas.* Exemption laws are local and

"pertain to the remedy having no extraterritorial effect." The framers of the Constitution and the lawmakers in defining a homestead were evidently *not attempting to say what should be the homestead in some other state.* When they added the provisions for exemption of the proceeds of the sale they were, in our opinion, also evidently referring to "the homestead" provided by other parts of the law and *not to a homestead in some other state.* This conclusion is sustained, we think, by the following authorities: *Rogers v. Raisor,* 60 Iowa, 355, 14 N.W. 317; *Dalton v. Webb,* 83 Iowa, 478, 50 N.W. 58, 32 Am.St.Rep. 314; *State Bank of Eagle Grove v. Dougherty,* 167 Mo. 1, 66 S.W. 932, 90 Am.St.Rep. 422; *Wickwire v. Zeller (Ky.),* 68 S.W. 630 [(1902)].

*See Wm. Cameron & Co., Inc. v. Abbott,* 258 S.W. 562 (Tex.Civ.App.1924) (emphasis added). In 1988, the bankruptcy court for the Western District of Texas cited the 1924 *Abbott* case with approval: "Exemption laws are local in their nature and have no extraterritorial force or operation; they relate to the remedy and depend on the law of the forum." *See In re Peters,* 91 B.R. 401, 403 (Bankr.W.D.Tex.1988), citing *Bell v. Indian Live–Stock Co.,* 11 S.W. 344 (Tex.1889); *Abbott,* 258 S.W. 562. The court explained:

> This Court has previously been faced with a similar issue involving proceeds from a pre-petition sale of a debtor's Iowa homestead. At that time this Court ruled that Texas statutory references to homestead are limited to homesteads located within the state of Texas. *In re John and Joann Schmidt,* Case No. 1–86–01102 (Bankr.W.D.Tex., September 1, 1987). To reach a contrary result could lead to absurd results. By the mere happenstance of filing in Texas, or through blatant forum shopping, a debtor could attempt to change the size,

value or susceptibility to claims of creditors of real property located in other states, or as in this case, other countries.

*Peters,* 91 B.R. at 404.

Finally, the bankruptcy court for the District of Idaho also had before it the issue of "whether Idaho law can be the vehicle to claim a homestead on Ohio property as a matter of state law." *See In re Halpin,* 1994 WL 594199 (Bankr.D.Idaho 1994). "While exemption statutes should be liberally construed in favor of the debtor, *In re Olsen,* 93 I.B.C.R. 130, 131, the Court can find no support in the Idaho statutes or case law for the proposition that an Idaho exemption can protect a debtor's interest in real property located outside the state. Rather, the Idaho decisions do not address this question." *Id.* The court looked to secondary authority: "[H]omestead statutes can have no extraterritorial force; they must be construed to apply solely to homesteads within the state," 40 Am.Jur.2d Homestead § 14 (1968), and cited with approval the Texas bankruptcy court's decision in *Peters. Id.*

In reaching the conclusion that "Idaho's exemption laws do not allow Debtors to claim a homestead on real property located outside the state of Idaho," the court reasoned:

> This holding also makes sense as a matter of public policy. Not allowing the use of the Idaho homestead statute to protect non-Idaho land would also discourage forum shopping by debtors seeking to take advantage of Idaho's somewhat liberal $50,000 exemption as to property located in states where the local exemption is less. Creditors can be expected to be aware of the applicable exemption laws in those states in which their debtors live at the time of the transaction. Out-of-state creditors would not necessarily be familiar with

Idaho's homestead exemption. Unfair interference with the normal risks associated with granting credit could result if debtors could, after defaulting on credit, invoke the sanctuary of the Idaho homestead statutes to protect their out-of-state real property.

*Halpin,* 1994 WL 594199.

The Court is persuaded that the reasoning followed by the majority is the more sound. While it is noble, and not wholly untrue, to state that the policies behind homestead exemptions transcend borders, such a statement is esoteric.[4] The actual constitution of communities in our country is of many distinct localities. While each locale may indeed share a basic aspirational agenda, especially with regard to its socio-economic condition, the laws originating from each state nevertheless emerge from policy in infinite and not insubstantial varieties. If each state does not actually have different policy concerns or interests, then the right to promulgate laws to protect its real or perceived interests is nominal and, in particular, state homestead exemption statutes would be superfluous.

In 1995, this bankruptcy court (Kishel, CJ) noted the "strong possibility" that a Minnesota debtor's claimed exemption in real property located in the state of Flori-da "is constitutionally prohibited." *See In re Cochrane,* 178 B.R. 1011, 1018 (Bankr. D.Minn.1995). The court explained:

This probable bar is inherent in the nature of our federal system, at one of its most basic levels: the limits on the ability of a state to exercise jurisdiction over assets that are not located on its very soil. Debtor proposes to shelter certain real estate from the claims of his creditors, by invoking the law of a state that is halfway across the continent from the real estate. Though the strength of the proposition has diminished over the Twentieth Century, each state in the United States still is in many respects an independent republic, insofar as the legal regulation of contractual relationships is concerned. When it comes to the enforcement of creditors' claims against real estate, the regulatory power of a legislature really goes no further than its own state's boundaries. The state of Minnesota has no business dictating to Florida judgment creditors, as to how they may enforce their claims against assets that are situated in Flori-da. This limitation, imposed as it is by the basic nature of federalism, cannot be unseated merely because a subject debtor happens to be involved in a bankruptcy case in federal court.

---

4. "[T]he legislative exemption is the main base for debtor protection." *See* Bankruptcy Law Fundamentals § 7:1, THE CHOICE OF LAW AND STATE PREEMPTION (2003) (citation omitted). "The exemption is a legislative choice that the debtor should retain forms or amounts of property even at the creditor's expense. The rationale is usually a subsistence core to protect debtor and dependents. Avoidance of making the debtor a public charge is an overlapping theme. And, as the history and details of various statutory exemptions are examined, a strong theme of retaining the means to earn and hence repay comes through." *Id.* In spite of the United States Bankruptcy Commission's proposal

"that only federal exemptions apply in bankruptcy," arguably "justified by the bewildering array of variations from state to state exacerbating geographical rather than substantive uniformity of the bankruptcy laws; and the observable fact that the variations were enormous," states were ultimately allowed the opt-out provision of § 522(b) apparently because "certain members· in the Senate objected to the overly generous list of exempt assets in the federal provision and argued for state determination of the needs of the local citizens in financial distress." *Id.,* citing *In re Neiheisel,* 32 B.R. 146 (Bankr. D.Utah 1983).

*Cochrane,* 178 B.R. at 1018 n. 8.[5]

## IV. Conclusion

 "[B]ankruptcy courts must keep in mind the social policies which generate exemptions." *Johnson,* 880 F.2d at 82, citing *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 876 (8th Cir.1988).[6] "These policies, implicit in the Bankruptcy Code and state law, have as their aim the provision of property to the debtor useful to his continuing survival." *Johnson,* 880 F.2d at 82. "Each state's selection and structuring of their exemptions reflects judgments about particular state interests." *Id.* "Variations in the law are sanctioned by Congress' choice to allow the states to fix their own exemptions." *Id.*

Minnesota has a strong and longstanding policy of protecting the homestead. "This state has long recognized the importance, notwithstanding the just demands of creditors, for a debtor's home to be a 'sanctuary.'" *See Denzer v. Prendergast,* 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964), cited in *Johnson,* 880 F.2d at 82–83. "This 'wise and humane policy' is not just for the debtor's benefit, but is also 'in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed.'" *See Ferguson v.*

*Kumler,* 27 Minn. 156, 159, 6 N.W. 618, 619 (1880), cited in *Cargill, Inc. v. Hedge,* 375 N.W.2d 477, 479 (Minn.1985), quoted in *Johnson,* 880 F.2d at 82–83. It "is obvious that Minnesota's homestead policy reflects a considered state judgment about the organization of everyday life in that state." *Johnson,* 880 F.2d at 83.

Nevertheless, exercising dominion over real property located in the state of Arizona, and shielding that property from the claims of creditors, or with respect to property in any state other than the state of Minnesota, does not necessarily further the policies underlying Minnesota's generous homestead exemption. The Court fails to see how protecting a primary residence in one state can legitimately serve the interests of a different state, especially when the individuals for whom the protection is enacted have voluntarily chosen to inhabit and conduct their lives in the state with the property. What the Court sees clearly, however, is the opportunity for forum shopping. In this case, whether by design or mere happenstance, the timing of the Drenttels' filing was just 60 days short of residence in Arizona longer than in Minnesota for the immediately preceding 180 days. This calculation enabled them to choose the Minnesota exemptions. If extraterritorial effect were permissible, the Drenttels would enjoy Minnesota's $200,000 homestead exemption and avoid the much smaller $100,000 homestead ex-

---

5. The court in *Cochrane* decided the controversy on other grounds and did not therefore issue a holding regarding the extraterritorial applicability of Minnesota's homestead exemption statute. However, the analysis is nevertheless probative to the issue which now must be decided in this case.

6. "(1) To provide the debtor with property necessary for his physical survival; (2) To protect the dignity and the cultural and religious identity of the debtor; (3) To enable the debtor to rehabilitate himself financially and

earn income in the future; (4) To protect the debtor's family from the adverse consequences of impoverishment; (5) To shift the burden of providing the debtor and his family with minimal financial support from society to the debtor's creditors." *Tveten,* 848 F.2d at 876, citing *Federal Land Bank of Omaha v. Ellingson (In re Ellingson),* 63 B.R. 271, 277–78 (Bankr.N.D.Iowa 1986) (*quoting* Resnick, Prudent Planning or Fraudulent Transfer?, 31 Rutgers L.R. 615, 621).

emption allowed under Arizona law, even though they are now and intend to remain for the indefinite future domiciled in Arizona.

■ "The limits on a State's power to enact substantive legislation are similar to the limits on the jurisdiction of state courts." *See Edgar v. MITE Corp.,* 457 U.S. 624, 643, 102 S.Ct. 2629, 2641, 73 L.Ed.2d 269 (1982). "In either case, 'any attempt directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power.'" *Id.,* citing *Shaffer v. Heitner,* 433 U.S. 186, 197, 97 S.Ct. 2569, 2576, 53 L.Ed.2d 683 (1977). The Court finds that Minnesota homestead exemption statute does not have extraterritorial effect and that the Drenttels' residence in Arizona is therefore not exempt, and constitutes property of the bankruptcy estate.

### III. Disposition

For the reasons set forth above, IT IS HEREBY ORDERED:

1. The Trustee's objection is SUSTAINED; and

2. The real property located at 5449 North Bremont Way, Prescott Valley, Arizona, legally described as *Lot 139, Granville Unit 1, according to the plat of record in Book 44 of Maps, pages 28–36, records of Yavapai County, Arizona,* is property of the bankruptcy estate.