THE STATE OF KANSAS, *ex rel. Joseph Taggart, as County Attorney, etc., et al., Plaintiffs,* v. F. M. HOLCOMB, *as County Clerk, etc., Defendant,* (THE CITY OF KANSAS CITY, MISSOURI, *Interpleader*).

No. 17,294.

### SYLLABUS BY THE COURT.

1. TAXATION—*Property in Kansas belonging to Missouri Municipality.* A water plant owned by a municipality of Missouri and located in Kansas is subject to taxation under the laws of Kansas.

2. ———— *Exemption — Municipal Property — Local — Foreign.* The exemption from taxation of the property of the state and any of its municipalities, provided for in the constitution and statutes, refers to the municipalities of Kansas and not to those of another state.

The State v. Holcomb.

3. ———— *Property of Foreign State or Municipality Subject to Taxation Same as Private Owner.* When a state, or any of its municipalities, goes into another state and there acquires and uses property it does not carry with it any of the attributes of sovereignty nor exercise of governmental power. It has no other or greater right there than any other private owner of property and its property is subject to the taxation which the laws. of that state impose.

Original proceeding in mandamus.　Opinion filed June 10, 1911.　Peremptory writ allowed.

*Joseph Taggart,* county attorney, and *Keplinger & Trickett,* for the plaintiffs.

*John G. Park, Inghram D. Hook,* and *A. L. Berger,* for the interpleader.

The opinion of the court was delivered by

JOHNSTON, C. J.:　This is an action to compel F. M. Holcomb, as county clerk, to extend upon the tax rolls of the county for taxation a waterworks plant owned by the municipality of Kansas City, Mo., which is situated in Wyandotte county, Kansas.　The county clerk declined to place the property on the tax rolls because of a claim that it was exempt from taxation. The municipality of Kansas City, Mo., intervened and alleged that it had charter authority to own and operate waterworks, to supply the city and inhabitants with water, either inside or outside of its corporate limits, and that its water plant, a part of which is located in Kansas, had been acquired by the city under a decree of the federal court adjudging that the then owner should sell and the city should purchase on terms fixed by the court; that the property proposed to be taxed is worth more than $200,000 and that the tax proposed to be levied on the property would amount to $16,000 or more per year, and that as the property is owned exclusively by the municipality and used and operated exclusively for public purposes it is, and

should be held, exempt from taxation. There are allegations, also, that to extend the property on the tax rolls would conflict with the state constitution, and also with the provision of the federal constitution prohibiting a state from depriving any person of life, liberty, or property without due process of law or from denying to any person within its jurisdiction the equal protection of the law. Among other things it is alleged that the two cities lie close together, being divided only by the state line running through the center of a public street, and that the water plants of both are contiguous and arranged so that connections can be readily made and so that there may be coöperation between the fire departments of the two cities, and that, in times past, each has rendered assistance to the other to the mutual advantage and benefit of both. The state challenges the sufficiency of the answer of the interpleader and the case is submitted here on its demurrer.

The principal and controlling question arising on the pleadings is: Should the water plant be entered on the tax rolls, or is it exempt from taxation the same as like property of Kansas municipalities? The state of Kansas does not tax its own property nor that of any of its municipalities. They are expressly exempted by section 1 of article 11 of the constitution, which ordains that:

"The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation."

From the organization of the state until the present time it has been provided by statute that property of this state and of the United States shall be exempt from taxation, as well as property of any county, city, town or school district. (Gen. Stat. 1868, ch. 107,

§ 3; Laws 1907, ch. 408, § 2, Gen. Stat. 1909, § 9216.)
It is inconsistent with our theory of government for a
sovereign state to tax itself or any of its instrumentalities in order to raise money for itself. It would amount
to no more than taking money from one pocket and
putting it into another. It has been held that a general
provision that all property within the state shall be
taxed necessarily implies an exception of the property
of the state enacting the law and that of its agencies
and instrumentalities, such as counties, cities, towns,
and school districts. In section 773 of volume 2 of the
fourth edition of Dillon's Municipal Corporations, it is
said:

"The general statutes of the state upon the subject of
taxing property undoubtedly refer to private property,
and not to that owned by the state; and, in view of the
public nature of municipalities, and the purposes for
which they are established, heretofore explained, the
author is of opinion that such enactments do not, by
implication, extend to any property owned by them—
certainly to none owned by them for public uses."

Of like import are the following authorities: *People
v. Doe G. 1,034,* 36 Cal. 220; *Directors of Poor v. School
Directors,* 42 Pa. St. 21; *Camden v. Village Corporation,* 77 Maine, 530; 12 A. & E. Encycl. of L. 568.

There is, as we have seen, an express exemption of
both federal and state property in Kansas, but it is
claimed by the interpleader that this exemption applies to property of another state or, rather, to a municipality of the state of Missouri. A state is sovereign
only within its own boundaries and its laws have no
extraterritorial force. In making their constitution the
people of Kansas were providing for their own institutions, municipalities and agencies and not for those of
another sovereignty. The legislature, in enacting laws
relating to taxation and to exemption from taxation,
must be deemed to have understood the extent of its
power and to have had in mind our own state and the

counties, cities, and school districts within the state for which it was empowered to legislate. (*St. Edward's College v. Tax Collector*, 82 Tex. 1; *The People v. Seaman's Friend Soc.*, 87 Ill. 246.) It is true that the consitutional provision relating to taxation (Const. art. 11, § 1) does provide that all property used exclusively for "municipal" purposes shall be exempt, but the fact that the provision does not expressly say that the constitution is made for Kansas is not a good basis for an inference that the framers were attempting to regulate and protect the municipalities of other states. It is hardly to be presumed that they were attempting to exercise power over the state of Missouri, or of its municipal corporations, and neither can it be presumed that the legislature undertook to transcend its constitutional powers by providing a scheme of taxation for Missouri when the tax law was enacted. In the article of the constitution where the exemption is made of property used for state, county and municipal purposes there is an exemption of personal property to the amount of at least $200 provided for each family and it does not expressly say that the exemption is intended for a family residing in Kansas, but it will hardly be contended that this exemption would apply to a family residing in another state that happened to own property in Kansas, and yet there is as good reason for holding that the provision applies to a Missouri family as that the earlier provision of the same section has reference to a Missouri municipality. In a subsequent section of the same article it is provided that the state shall not contract any debt until it is authorized by a vote of the electors, and, in another, a restriction is placed on the state in regard to borrowing money, while, in still another, the state is prohibited from carrying on any works of internal improvement. In none of these provisions is the name of the state given, but who would claim that any other state than Kansas was in mind or that these sections applied to any other

state than our own? The provisions of both the constitution and the statutes, in relation to exemption from taxation, must be understood as referring to Kansas and to the counties, municipalities and families of Kansas over which it has power of visitation and control.

A reference is made to *Sumner County v. Wellington,* 66 Kan. 590, as holding that the constitution contains a sweeping clause which absolutely prohibits the taxation of municipal property, regardless of whether the municipality is foreign or domestic. That case involved the right to tax the waterworks plant of a city of the state and, in consonance with the provisions of the constitution and statutes, it was held to be exempt, and the language of the opinion should be read in the light of the question that was being treated. There was no occasion there to draw distinctions between municipalities of this and other states and it probably never occurred to anyone concerned in the case that a city outside of the state might claim that the constitution was made to control it or to grant it immunity from taxation if it should bring its property within the state. The language of a decision, as well as of a statute or constitution, is to be understood in the sense which will best harmonize with the subject under consideration, the occasion, and the object to be accomplished. (*Griffith v. Carter,* 8 Kan. 565; *The State v. Bancroft,* 22 Kan. 170; Endlich, Interp. of Stat., § 73.)

In *The State v. Smiley,* 65 Kan. 240, it was held:

"The general language of statutes will be limited to such persons and subjects as it is reasonable to presume the legislature intended it should apply." (Syl. ¶ 1.)

It was further said:

"Throughout the entire history of English and American law the courts have been ruling that the general words of statutes were to be restrained in import and application whenever the taking of them in a literal sense would lead to absurd or hurtful consequences, and the same is true under the American system of

written constitutions, whenever the taking of general words in their full signification would expose them to conflict with the organic law." ' (p. 249.)

Again, provisions giving immunity from taxation are to be strictly construed, and anyone claiming that he should escape his share of the public burden must show a clear and express constitutional or statutory exemption. The exemption will not be sustained unless it is given by constitution or statute in clear and unambiguous language and appears to be indisputably within the legislative intention. (*Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344; *Ottawa University v. Comm'rs of Franklin Co.,* 48 Kan. 460; *The State v. Holcomb,* 81 Kan. 879.) When this rule of interpretation is applied it is quite clear that the exemption of the property of a foreign municipality was not within the contemplation of either the constitution or the statue.

When the interpleader purchased and proceeded to operate a water plant it was acting in its proprietary and not in its governmental capacity. It has been said:

"Contracts on the part of a municipality for the supply to the municipality and to its citizens of water and light are not made in the exercise of the governmental powers vested in the municipal council, but of its proprietary or business powers. It is acting for the private benefit of itself and its inhabitants, and its contracts of that character are governed by the same rules that govern contracts of private individuals and corporations." (*Little Falls Electric & Water Co. v. City of Little Falls,* 102 Fed. 663, 664.)

(See, also, *Illinois Trust & Savings Bank v. City of Arkansas City,* 76 Fed. 271.)

It was in this capacity that the interpleader came into Kansas, and in the absence of a specific grant by the legislature it has no other or greater rights than a private corporation engaged in the same business. It is part of a sovereignty, it is true, but its powers can not be exercised in Kansas. As already stated, a state

of the Union is only sovereign in its own territory. In the relations between the several states they are treated as foreign to each other and the laws of one are without force in the territory of another. (*Hanley v. Donoghue*, 116 U. S. 1.) When a state, or any of its municipalities, comes within the boundaries of another state it does not carry with it any of the attributes of sovereignty, and is subject to the laws of such other state the same as any other proprietor. In *U. S. Bank v. Planters' Bank*, 22 U. S. 904, a question arose as to whether a state, which had become a member of a business corporation, carried its sovereign prerogatives with it into another state, and the court said:

"It is, we think, a sound principle, that when a government becomes a partner in any trading company, it devests itself, so far as concerns the transactions of the company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted." (p. 907.)

The same principle was stated by Mr. Chief Justice Marshall in 1829 in *The Bank of the United States v. M'Kenzie*, (U. S. C. C.) 2 Fed. Cas. 718, 2 Brock. 393, where it was said to be "a well-settled principle, that where a sovereign becomes a member of a trading company, it devests itself, with reference to the transactions of the company, of the prerogatives of sovereignty, and assumes the character of a private citizen." (Syl. ¶ 4.)

(See, also, *United States v. Buford*, 28 U. S. 30; *Briscoe v. The Bank of the Commonwealth of Kentucky*, 36 U. S. 324; *Darrington et al. v. The Bank of Alabama*, 54 U. S. 12; *Curran v. State of Arkansas et al.*, 56 U. S. 304; Angell, Limit., 6th ed., § 41.)

The supreme court of Pennsylvania, in *Susquehanna Canal Company v. Commonwealth*, 72 Pa. St. 72, decided that the property of one state found in another was subject to taxation by the state in which it was

located, and some portions of the opinion bear closely on the question involved here. It was said:

"The only new and undecided point in the case arises on the money due to the state of Maryland. Is that subject to taxation by our laws? We can not doubt the power of our legislature to tax the property of another state situated within Pennsylvania, or choses in action, bonds or other claims—a lien on property protected by our laws or where they must be invoked to coerce payment of the debt. The only question is, Do the laws embrace the bonds due to a sovereign state? It may be conceded that here, as in England, laws which speak in general of inferior persons, can not properly be applied to superiors. Those which speak of the subject do not embrace the sovereign; or of the people do not include the state. It is well settled, however, that the statute may by express words extend to the state, and where it does so it is binding. The statute of limitations in general will not bar the sovereign, yet it may be and often is made so to do, both here and in England; and this either by express words or necessary implication. It has also been held that where an act of parliament is made for the public good, the advancement of religion or justice, or to prevent injury and wrong, the king shall be bound by such act, though not particularly named therein: Plowd. 136-7, 11 Co. 586, 5 Id. 14, 7 Id. 32; Bouvier's Bac. Abr. vol. 8, tit. *Prerogative*, p. 92. Laws imposing taxes would rarely be applied to property solely owned by the state, for the same hand would both pay and receive. This could not apply to the property of another state found in this, for the recipient would be different from the person paying. It is questionable whether any other sovereign can claim exemption from the laws of the state which enacts them. If another state or foreign sovereign sues to collect its debts in our courts, it can not claim immunity from the operation of the statute of limitations. The doctrine of *nullum tempus*, &c., only runs in favor of the local, not the foreign sovereign. It may be assumed as a settled principle that when a sovereign becomes a member of a trading company he devests himself, with reference to the transactions of the company, of the prerogatives of sovereignty, and assumes the character of a private citizen. . . . If the state of Maryland owned land in Pennsylvania, the power of the latter state to tax it could not be questioned; in fact it would be tax-

able by our general laws. Why will not the same doctrine apply as to its goods, or choses in action? The ability to collect the latter depends on our laws—resort must be had to our courts to obtain redress for non-payment. We protect the property to which that state must look for security of its debt. The loan is to the corporation created by this state, receiving its powers and franchises from Pennsylvania, and why shall not the debt of that state be taxed as well as that due to a foreign subject, which has often been decided to come within our tax laws? The state of Maryland becomes a lender of money, trades and deals with a Pennsylvania corporation, brings itself thereby down to the level of a private individual, and its debt must bear the same burdens." (pp. 75-77.)

And so it may be said here that when a city of the state of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property, not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign municipality, who is here in the capacity of a private proprietor and whose property receives protection from the state, should contribute nothing toward that protection or should escape paying the taxes imposed upon other owners of property. It is clear that the exemptions from taxation, provided for the state and for cities and municipalities of the state, are only declaratory of the immunity that would be granted on fundamental principles of government and that the cities and municipalities referred to in the statute and constitution are those of our own state.

The fact that municipalities of another state which become proprietors in Kansas are not accorded exemption from taxation is no basis for the claim that the interpleader is denied the equal protection of the laws or deprived of property without due process of law in violation of the federal constitution.

The peremptory writ of mandamus will be issued in accordance with the prayer of plaintiffs' petition.