**In re Mark Alan GINTHER, Bregette Lee Ginther, Debtors.**

No. 01–15898.

United States Bankruptcy Court, D. Kansas.

Aug. 7, 2002.

---

Martin R. Ufford, Redmond, Redmond & Nazar, L.L.P., Wichita, KS, for debtors.

J. Michael Morris, Wichita, KS, for trustee.

## *MEMORANDUM AND ORDER*

ROBERT E. NUGENT, Bankruptcy Judge.

This case comes before the Court on the trustee's Objection to Claim of Exemption pursuant to 11 U.S.C. § 522(b)(2)(A).[1] The debtors seek to claim as exempt $37,000 as proceeds from the sale of their Kansas homestead which they intend to reinvest in Colorado real estate. The trustee objects to the debtors's claim of exemption on the grounds that Kansas does not recognize an extraterritorial homestead. The issue presented is whether the Kansas homestead exemption ap-

plies when a debtor intends to reinvest the Kansas homestead proceeds in real estate outside of Kansas.

The parties stipulated to the following facts. The Ginthers lived in Atwood, Kansas until September 25, 2001. While in Atwood, the Ginthers owned and operated Ginther Oil, Inc., consisting of a fuel station, repair shop and convenience store. After the business failed, the Ginthers sold the components of the business as a going concern. Mrs. Ginther remained in Atwood with their children while Ginther Oil was being liquidated. In February, 2001, Mr. Ginther found work as a pavement maintenance worker in Colorado, living out of motels and visiting his family in Atwood whenever he could.

In the summer of 2001, Mrs. Ginther and the children decided to move to Colorado to be closer to Mr. Ginther. The convenience store was sold and the Ginthers proceeded to sell their home in Atwood. The Ginthers executed a contract to sell their home, establishing a closing date of September 25, 2001.

The Ginthers then entered into a contract to purchase a home in Colorado Springs, Colorado. Due to the uncertainty in the economy following the September 11th terrorist attacks, however, the Ginthers decided to cancel the contract to buy the Colorado home. On September 18, 2001, the Ginthers entered into a seven-month lease of a different home in Colorado Springs.

The closing on their Atwood home was held on September 25, 2001 and the Ginthers received net proceeds of $42,280.66. The Ginthers deposited the sale proceeds in a new account with The People's State Bank in Colby, Kansas on September 27,

[1] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise specified.

2001. The Ginthers did not deposit money from any other source into this account, but withdrew $4,000.00 from the account on October 16, 2001 and $1,358.41 on November 19, 2001 for living expenses.

Mrs. Ginther became employed with Peoples Bank in Colorado Springs on November 6, 2001. On December 12, 2001, the Ginthers filed for Chapter 7 bankruptcy in Kansas. During a Rule 2004 examination conducted by the trustee on January 23, 2002, the Ginthers stated they had no intention of returning to Kansas and intended to reinvest the proceeds from the sale of their Kansas homestead in a new homestead in Colorado.

## ANALYSIS

The trustee objects to the debtors's claim of exemption under § 522(b)(2)(A), which provides that a debtor may claim as exempt:

> any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place.

On the date the debtors filed their bankruptcy petition they had been domiciled in Kansas for the greater part of the previous 180 days and therefore, Kansas law applies in this case.

The Kansas homestead exemption is codified in KAN. STAT. ANN. § 60–2301 (1994), which states:

> A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incor-

porated town or city, or a mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and the family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, when that relation exists.[2]

The Kansas Constitution provides for this homestead exemption as well. KAN. CONST. art. 15, § 9.

█ The homestead laws of Kansas are to be liberally construed in favor of those claiming the exemption. *In re Estate of Dittemore*, 152 Kan. 574, 576, 106 P.2d 1056 (1940). The purpose of the homestead exemption is to protect the family from destitution and to benefit society by preventing her citizens from becoming paupers. *Anderson v. Shannon*, 146 Kan. 704, 711, 73 P.2d 5 (1937).

█ The Kansas homestead exemption is supplemented by a rule created by Kansas courts to protect the proceeds from the sale of a homestead: "[T]he proceeds of a Kansas homestead designed in good faith for reinvestment in another homestead within a reasonable time are exempt from any and all processes invitum." *First Nat'l. Bank v. Dempsey*, 135 Kan. 608, 609, 11 P.2d 735, 736 (1932)

---

2. Kansas has opted out of the federal exemption package, 11 U.S.C. § 522(d), such that the only exemptions available to the debtors are those available under Kansas law. Furthermore, the validity and extent of such exemptions are controlled by state law.

(proceeds from exchange of farm in Pottawatomie county for house in Manhattan). *See also In re Daniels*, 65 B.R. 703, 705 (Bankr.D.Kan.1986) (proceeds from an involuntary sale of homestead are exempt if the debtor intended to purchase another homestead with the proceeds). In order to continue an exemption in homestead proceeds, the intent to use the proceeds to obtain another homestead must be formed at or before the time of the sale. *Smith v. Gore*, 23 Kan. 488, 490 (1880).

It is well-established that the exemption laws are to be construed liberally in favor of exemption. *In re Mueller*, 71 B.R. 165, 167 (D.Kan.1987), *aff'd* 867 F.2d 568 (10th Cir.1989). Moreover, once an exemption is claimed, the burden is on the party objecting to prove that the exemption is not properly claimed. *In re Zink*, 177 B.R. 713, 714 (Bankr.D.Kan.1995); Fed. R. Bankr.P. 4003(c). A debtor's right to an exemption is determined as of the date the bankruptcy petition is filed. *In re Currie*, 34 B.R. 745, 748 (D.Kan.1983). In this case, the relevant time period is 2001.

The trustee does not contend the debtors's Atwood home was not a homestead. Nor does he challenge the timely, good faith intent of the debtors to reinvest the proceeds in another homestead. Instead, the trustee argues that the Kansas homestead exemption does not cover proceeds to be used to purchase a homestead outside of Kansas. This is an issue of first impression in Kansas.

The Court agrees with debtors that neither the constitutional nor statutory exemption explicitly limits the homestead exemption to homesteads in Kansas. While Kansas case law does not address this specific question, the Kansas Supreme Court has several times held that state law, and in particular, state exemption law, is without effect beyond the territorial boundaries of the state. *State v. Holcomb*, 85 Kan. 178, 181, 116 P. 251 (1911) ("A state is sovereign only within its own boundaries, and its laws have no extraterritorial force."). Thus, this Court must reject debtors' argument that, in the absence of this express limitation in the Kansas constitution and statute and the proceeds rule as adopted by Kansas case law, the Kansas Legislature intended to protect homesteads located outside state boundaries.

> ... the fact that the provision does not expressly say that the constitution is made for Kansas is not a good basis for an inference that the framers were attempting to regulate and protect the municipalities of other states.... In the article of the constitution where the exemption is made of property used for state, county and municipal purposes there is an exemption of personal property to the amount of at least $200 provided for each family and it does not expressly say that the exemption is intended for a family residing in Kansas, but it will hardly be contended that this exemption would apply to a family residing in another state that happened to own property in Kansas ...

*Holcomb, supra* at 182, 116 P. 251.

Similarly, the Kansas Supreme Court has expressly held that one state's exemption laws do not have effect in another state. In *Burlington & M.R.R. in Neb. v. Thompson*, 31 Kan. 180, 1 Pac. 622 (1884), a Kansas resident sought and received a money judgment against an employee of the railroad. The railroad was a Nebraska corporation with its principal office in Omaha. The employee was a Nebraska resident who worked for the railroad on the train route from Lincoln to Atchison and apparently incurred the debt in question on one of his trips to Kansas. When the Kansas creditor garnished the employ-

ee's wages, the railroad and the employee objected that, because the employee's wages were exempt at Nebraska law, they were insulated from garnishment in Kansas. Writing for a unanimous Supreme Court, Justice Brewer stated:

We think these propositions are sound: The laws of a state have no extraterritorial force. This as a general proposition is unquestioned, and includes within its scope exemption as well as other laws. So, although the laws of Nebraska, where employer and employee reside, exempt laborers' wages absolutely, it does not follow that the courts of another state, will, in controversies pending before them, enforce the same exemption. On the contrary, the matter of exemption being one affecting the remedy, at least within certain limitations, is one controlled by the *lex fori* and not by the *lex loci contractus*. Therefore, although both creditor and debtor reside within the limits of the state, the exemption laws of that state do not control garnishee proceedings in another. [citations omitted].

31 Kan. at 623–24, 3 P. 305.

Other state courts have similarly held. In *Wm. Cameron & Co., Inc. v. Abbott*, 258 S.W. 562 (Tex.Civ.App.1924), the Texas Court of Civil Appeals held that the Texas homestead exemption did not apply to the proceeds of a debtor's Oklahoma homestead (exempt in Oklahoma) when those funds were brought to Texas, even though the debtor harbored the present intent to reinvest same in a homestead.

Exemption laws are local and "pertain to the remedy having no extraterritorial effect." The framers of the Constitution and the lawmakers in defining a homestead were evidently not attempting to

say what should be the homestead in some other state.

258 S.W. at 564. This decision was followed by a Texas bankruptcy court in denying a debtor's claim of a Texas homestead exemption to preserve a residence at Sao Paulo, Brazil. *In re Peters*, 91 B.R. 401 (Bankr.W.D.Tex.1988).[3]

The debtors cite many cases, including one from this court, giving exemptions extraterritorial force. In particular, they rely on the Ninth Circuit's decision in *In re Arrol*, 170 F.3d 934 (9th Cir.1999). In *Arrol*, a debtor was permitted to exempt a residence located in Michigan by applying California's homestead exemption. The debtor filed a Chapter 7 bankruptcy in California shortly after moving back to Michigan, where the debtor had owned a home since 1982. He claimed the Michigan home exempt under California's homestead law. The court concluded that the California statutory homestead exemption is not limited to dwellings within California. The court reasoned that the legislative goal of "providing a place for the family ... where they may reside and enjoy the comforts of a home ..." transcends state boundaries. 170 F.3d at 936, *citing Strangman v. Duke*, 140 Cal.App.2d 185, 295 P.2d 12 (1956). Just as the Texas bankruptcy court was bound by the Texas case law precedent on exemptions, so too, is this Court bound by the Kansas Supreme Court's ancient precedent that Kansas' exemption laws have no extraterritorial force. *In re Dvorak*, 176 B.R. 929, 933 (Bankr.D.Kan.1994) (Bankruptcy court is bound by interpretation of state's highest court given to its own statute).

The debtors cite *In re Bentley*, 245 B.R. 684 (Bankr.D.Kan.2000) as a case in which "[a]t least one Kansas bankruptcy decision has ... found that in fact a Kansas exemp-

---

3. The Texas homestead law explicitly provides that it applies to all homesteads within the

state of Texas. *Id.* at 404. *See* TEX. PROP. CODE ANN. § 41.002(C).

tion law does have extraterritorial effect." Debtor's Reply Br., p. 6. *Bentley* involved the federal alimony exemption law § 522(d)(10)(D), incorporated by reference in KAN. STAT. ANN. § 60–2312(b). In that case, the debtor had been granted alimony in an Oklahoma divorce proceeding as well as a lien on the debtor's former marital home as security for the alimony payments. The trustee challenged the debtor's claimed alimony exemption on the basis that the true character of the debtor's award in the divorce decree was a division of property (not exempt) rather than alimony. Judge Flannagan concluded that the bankruptcy court lacked the power to look behind the divorce decree to determine the true nature of the award except in proceedings under § 523(a)(5)(B), and allowed the exemption for the alimony lien. In *this* Court's view, *Bentley* and its interpretation of the alimony exemption law are simply unrelated and contribute nothing toward resolving the homestead exemption question presented here.

■ Moreover, the Court agrees that the rule of statutory construction applying exemption laws liberally may not be used to expand the statutory homestead exemption. *Nohinek v. Logsdon,* 6 Kan.App.2d 342, 345, 628 ·P.2d 257 (1981) (A liberal construction does not mean that courts may enlarge the exemption or read into the exemption provisions which are not there).

Harsh as the result may seem, this Court agrees with District Judge Belot's decision in *In re Sipka,* 149 B.R. 181 (D.Kan.1992), holding that the cash proceeds from sale of debtor's marital property in Michigan, some portion of which represented a division of the marital homestead, were not exempt. Judge Belot affirmed the bankruptcy court, reasoning that the proceeds from the Michigan homestead were not exempt in a Kansas bankruptcy case:

> ... Kansas would not have recognized an exemption for the debtor's Michigan homestead in the first instance. Accordingly, the transfer of the proceeds [from Michigan to Kansas] resulting from the involuntary sale of the homestead in Michigan does not render the proceeds exempt under Kansas law.

149 B.R. at 183.

Likewise, in the present case, Kansas would not have recognized an exemption for a Colorado homestead in the first instance. Thus, the proceeds from a voluntary sale of a Kansas homestead to be used to purchase a Colorado homestead, are not exempt. The debtors have manifestly stated their intention *not* to return to Kansas. Indeed, three months before filing this case, debtors attempted to purchase a home in Colorado Springs, relenting only when the economic uncertainties triggered by the events of September 11, 2001 occurred. Had debtors purchased a residence in Colorado, without question it would not have qualified for the Kansas homestead exemption in a subsequent Kansas bankruptcy filing. This Court agrees with the bankruptcy court in *Peters, supra* where it is stated:

> To reach a contrary result could lead to absurd results. By the mere happenstance of filing in Texas, or through blatant forum shopping, a debtor could attempt to change the size, value or susceptibility to claims of creditors of real property located in other states, or as in this case, other countries.

91 B.R. at 404.

In the instant case, the debtors had established a domicile in Colorado and, after· only a few more days, could have filed bankruptcy there and availed themselves of the reasonably generous Colorado homestead exemption. For unknown

reasons, they chose not to do that. The court finds that the trustee has shown that the Kansas homestead exemption has no extraterritorial force and that the debtors are not entitled to the exemption. No Kansas decision, whether by a state or federal court, suggests a contrary conclusion. The trustee's objection to exemption is SUSTAINED and, if they remain in possession of the funds, the debtors are ordered to turnover same to the trustee forthwith.

IT IS SO ORDERED.