### In re COOPER, Gregory D. and Cooper, Julia K., Debtors.

### No. 04–40218–7.

United States Bankruptcy Court, D. Kansas.

Sept. 7, 2004.

Teaque H. Pasco, Lawrence, KS, for Debtors.

## MEMORANDUM AND ORDER

JANICE MILLER KARLIN,
Bankruptcy Judge.

This matter is before the Court on the Chapter 7 Trustee's Objection to Exemptions (Doc. No. 8). The Court has jurisdiction to decide this matter,[1] and it is a core proceeding.[2] The parties have stipulated to the relevant facts, and based on those facts and applicable law, the Court sustains the Trustee's objection to exemptions.

## I. FINDINGS OF FACT

Debtors filed their Chapter 7 petition on February 6, 2004. They claimed a 1996 Nitro boat, 1996 Mercury Motor, and 1996 trailer (hereinafter the "Items") as exempt tools of the trade pursuant to K.S.A. § 60–2304(e). Gregory Cooper claimed the Items as exempt because he intends to work as a fishing guide in the future to supplement his income. At the filing of the petition, however, Gregory Cooper's sole occupation was an automobile salesman. He had never previously worked or earned any income as a fishing guide, although he has the requisite experience to be a fishing guide and applied for a guide license prior to the filing of the petition. However, a license is no longer required to be a fishing guide in Kansas. Linda Cooper is unemployed, and has never worked in an occupation that required the Items.

## II. CONCLUSIONS OF LAW

■ Under Kansas exemptions laws, Debtors can exempt

The books, documents, furniture, instruments, tools, implements and equipment, the breeding stock, seed grain or growing plants stock, or the other tangible means of production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to

---

**1.** 28 U.S.C. § 1334.

**2.** 28 U.S.C. § 157(b)(2)(B).

exceed $7,500.[3]

"In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'"[4] "Once a debtor claims an exemption, the objecting party bears the burden of proving the exemption is not properly claimed."[5]

█ The Trustee's objection in this case is two-fold. First, the Trustee claims that Debtors cannot claim the Items as exempt because neither of them were working as a fishing guide at the time they filed for bankruptcy, or had ever been so employed. Second, the Trustee claims that Debtors cannot claim the Items as exempt because neither of Debtors' primary occupation is a fishing guide.

### A. Debtors cannot claim the Items as exempt because neither of them were working as a fishing guide at the time the bankruptcy petition was filed, or had ever been so employed.

The Trustee claims that Debtors cannot claim the Items as exempt because neither of Debtors were working as a fishing guide at the time they filed their bankruptcy petition. Debtors do not contest that fact, but claim an entitlement to the exemption because Mr. Cooper planned on becoming a fishing guide at some point in the future, and because he had taken one step towards ultimately engaging in business as a fishing guide by seeking a license.

█ "A debtor's right to an exemption is determined as of the date that the bankruptcy petition is filed."[6] Generally, a debtor must be engaged in the trade or business on the date the petition was filed in order to claim the tools of the trade as exempt.[7] Courts have allowed a narrow exception to this rule where debtors can demonstrate that they have only temporarily ceased operations in a business, but have the intent to return to that business in the near future.[8] The Court has found no support, however, for Debtors' position that an exception to this rule should be created where a debtor has never been engaged in the trade or business, but indicates an intent to do so at some time in the future.

Debtors claim that even though Mr. Cooper had not yet performed any work, or earned any money as a fishing guide, the "business" existed to a sufficient degree to allow the Items to be exempted. As a preliminary matter, the parties have stipulated that no license is needed to be a fishing guide in Kansas, so the step was futile. The Court simply does not find that to be adequate evidence to constitute a "profession, trade, business or occupation."

Secondly, Debtors rely on *Keeler v. C.I.R.*[9] to support the contention that this Court must simply trust Debtors' contention that he has the subjective intent to supplement his income by becoming a fish-

---

3. K.S.A. § 60–2304(e).

4. *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) (quoting *In re Ginther*, 282 B.R. 16, 19 (Bankr.D.Kan.2002)).

5. *Id. See also* Fed. R. Bankr.Proc. 4003; *In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

6. *Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 210 (10th Cir. BAP 2002).

7. *In re Johnson*, 19 B.R. 371, 374 (Bankr. D.Kan.1982).

8. *See Lampe*, 278 B.R. at 211; *In re Liming*, 797 F.2d 895, 902 (10th Cir.1986); and *Johnson*, 19 B.R. at 374–75.

9. 243 F.3d 1212 (10th Cir.2001).

ing guide at some point in the future. In *Keeler*, the Tenth Circuit held that a taxpayer's intent should be used to determine whether the taxpayer's activities are aimed at generating a profit, which would show that the taxpayer was engaged in a trade or business.[10] The Court finds Debtors' reliance upon *Keeler* unpersuasive.

*Keeler* is legally distinguishable in that it relates only to whether a taxpayer can properly claim a deduction on his tax return, not whether a debtor can claim certain property as exempt. However, even if the holding in *Keeler* were applicable to this case, it is factually distinguishable, as well. The issue in *Keeler* was whether the taxpayer engaged in certain transactions with the intent to be engaged in a business. In other words, the court was faced with the issue of whether the taxpayer intended to engage in a business during the preceding tax year in question, not whether he intended to engage in that business in the future. In this case, the stipulations of fact make it clear that Mr. Cooper did not have the subjective intent to be engaged in a fishing guide business at the time the bankruptcy petition was filed, but rather that he intended on starting that business in the future.[11]

The Court finds no basis to alter the well established rule that a debtor must be engaged in the trade on the date the petition was filed in order to claim the tools of that trade as exempt. Mr. Cooper's intentions of starting a fishing guide business in the future does not entitle him to claim the tools needed for that business as exempt,

because the business did not exist at the time he filed the bankruptcy petition.[12]

## B. Debtors cannot exempt the Items because their primary occupation was not that of a fishing guide.

■ The Trustee also claims that even if the Court found that Debtors' efforts to obtain a fishing guide license prior to filing bankruptcy, or his subjective intent to become a fishing guide in the future, constituted an occupation at the time of bankruptcy, Debtors still cannot claim the Items as exempt because they were not used in their primary occupation. Debtors do not dispute the fact that Mr. Cooper's primary occupation is a car salesman, and that Ms. Cooper is unemployed. They nevertheless claim to be entitled to the exemption under Kansas law.

Numerous cases have addressed the requirements of the Kansas tools of the trade exemption as it relates to primary and secondary occupations. The seminal case on this issue is *Jenkins v. McNall*.[13] In *Jenkins*, the Kansas Supreme Court set forth the following interpretation of the Kansas tools of the trade exemption: "If [a debtor] has two separate pursuits, the exempted articles must belong to his main or principle business. In other words, to the business in which he is primarily engaged."[14] The holding of *Jenkins* was recently recognized by the Tenth Circuit Bankruptcy Appellate Panel in *In re Lampe*,[15] where it held "[i]n Kansas, the tools of the trade exemption applies only to

---

10. *Id.* at 1220.

11. Stipulation of Fact No. 11 states "Mr. Cooper claimed the boat, motor and trailer as exempt because **he intends to be a fishing guide in the future.**" (emphasis added).

12. *In re Johnson,* 19 B.R. at 374–75 (holding prospects for future employment in a trade

not engaged in at time of bankruptcy filing too "nebulous and indefinite").

13. 27 Kan. 532 (1882).

14. *Id.* at 534.

15. 278 B.R. 205 (10th Cir. BAP 2002).

the business or profession in which the debtor is 'principally engaged.' " [16]

Debtors claim that this Court should reject the Kansas Supreme Court's interpretation of the tools of trade statute articulated in *Jenkins*, and instead substitute its judgment for that of the highest state court. Debtors contend they should be allowed to claim items that are used in a business in addition to those used in Debtors' primary occupation. In support of this proposition, Debtors rely on *In re Kobs* [17] and *In re Thompson*.[18] Both *Kobs* and *Thompson* question the *Jenkins* ruling on the basis that the Kansas Supreme Court added a restriction to the exemption that was not placed there by the legislature.[19] That restriction is to interpret the language "profession, trade, business, or occupation" to allow a Debtor to exempt tools of trade from only his or her primary occupation.

Although the Court understands the issues and concerns raised in *Thompson* and

*Kobs*, this Court finds it must apply the primary occupation test unless the Kansas Supreme Court alters its long-standing interpretation of Kansas law. Bankruptcy courts are bound by the interpretation that the state's highest court gives to its own statutes.[20] The Kansas Supreme Court's interpretation of the tools of the trade exemption, as discussed in *Jenkins*, requires property to be used in debtor's primary job or occupation before it qualifies under K.S.A. § 60–2304(e).[21] The Supreme Court of Kansas has held that tools of the trade used in a secondary occupation are not exempt under Kansas law, and this Court therefore defers to that interpretation. Finally, although exemption statutes are to be liberally construed in favor of those intended by the legislature to be benefitted, "liberal construction" is not a license to enlarge an exemption or read into it provisions that are not found there.[22]

---

**16.** *Id.* at 210 (citing *Seel v. Wittman*, 173 B.R. 734, 736 (D.Kan.1994), *In re Zink*, 177 B.R. 713, 715 (Bankr.D.Kan.1995), and *In re Massoni*, 67 B.R. 195, 196–97 (Bankr.D.Kan. 1986)).

**17.** 163 B.R. 368 (Bankr.D.Kan.1994).

**18.** 311 B.R. 822 (Bankr.D.Kan.2004).

**19.** *See In re Thompson*, 311 B.R. 822 at 825 (noting that the Kansas Supreme Court "stated that Kansas exemption laws should be liberally construed and, in the same decision, vitiates this mandate by reading into the tools-of-trade exemption a limitation not expressly stated in the statute ...."), and *In re Kobs*, 163 B.R. at 373 (stating that "[w]hether such a test should be applied is problematic since the statute itself contains no language prohibiting outside employment or that indicates a person cannot qualify for exemptions when he or she holds more than one job.").

**20.** *In re Ginther*, 282 B.R. at 20 (citing *In re Dvorak*, 176 B.R. 929, 933 (Bankr.D.Kan. 1994)). *See also Clements v. Emery Worldwide Airlines, Inc.*, 44 F.Supp.2d 1141, 1148

(D.Kan.1999) (holding that "[f]ederal courts hearing cases on diversity jurisdiction do not have the authority to ignore a state supreme court's interpretation of its own statute and rule on a case based on how the federal court interprets the statute.").

**21.** The version of the tools of the trade exemption that the *Jenkins* court interpreted, Sec. 3, ch. 38, p. 437, Comp. Laws of 1879, provides:

"Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:...8th. The necessary tools and implements of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business...."

Today's version, although making more generic the kinds of employment, is not significantly different from the 1879 version.

**22.** *See In re Hodes*, 308 B.R. 61, 65 (10th Cir. BAP 2004).

This Court also presumes the Kansas legislature is aware that the majority of courts considering K.S.A. § 60–2304(e) have held debtors cannot "stack" occupations, and only tools of the trade from one's primary occupation can be exempted. Failure of the legislature to make what would be an exceedingly simple revision[23] to the statute buttresses this Court's opinion that the Legislature is satisfied that the majority interpretation reflects their will.[24]

## III. CONCLUSION

The Court finds the Trustee's objection to exemptions should be sustained. Debtors were not engaged in the fishing guide business at the time they filed their bankruptcy petition, but rather only had the intent of starting that business at some time in the future. In addition, even if the business did exist at the time the petition was filed, neither of Debtors' primary occupation was that of a fishing guide, thus rendering the Kansas tools of the trade exemption inapplicable to the Items. As the Supreme Court recently said, "our unwillingness to soften the impact of Congress' [here, the Kansas Legislature's] chosen words even if we believe the words lead to a harsh outcome is longstanding." It results from "deference to the supremacy of the Legislature...."[25] This Court will await legislative action before declining to follow this state's highest court's interpretation of the statute.

**IT IS, THEREFORE, BY THIS COURT ORDERED** that the Trustee's Objection to Exemptions (Doc. 8) is sustained. The 1996 Nitro Boat, 1996 Murphy Motor, and 1996 Trailer are not exempt tools of the trade.

---

23. The legislature could merely change the statute to add the underlined parts: "person*s*, profession*s*, trade*s*, business*es*, *and* occupation*s* in an aggregate value not to exceed $7,500."

24. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119, (1994) (dissent) (holding Legislature's failure to reject a consistent judicial construction counsel's hesitation from a court asked to invalidate it); *Johnson v. Transportation Agency*, 480 U.S. 616, 629, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (holding that since Congress has not amended relevant statute to reject Court's construction of it, Court may assume interpretation was correct. The Court noted "As one scholar has put it, 'When a court says to a legislature: You (or your predecessor) meant X,' it almost invites the legislature to answer: 'We did not.' G. Calabresi, A Common Law for the Age of Statutes 31–32 (1982). Any belief in the notion of a dialogue between the judiciary and legislature must acknowledge that on occasion an invitation declined is as significant as one accepted.")

25. *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).