**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: MARK CHRISTIAN SCHREIBER; DEBORAH JEAN SCHREIBER, Debtors, _____ ROBERT A. MACKENZIE, Trustee, Appellant, v. MARK CHRISTIAN SCHREIBER; DEBORAH JEAN SCHREIBER, Appellees. | No. 21-16028 D.C. No. 2:20-cv-01993-JJT MEMORANDUM* |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted February 8, 2022
Phoenix, Arizona

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  O'SCANNLAIN and GRABER, Circuit Judges, and FITZWATER,[**] District Judge. Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.

Appellant Robert A. MacKenzie ("Trustee"), a Chapter 7 trustee, appeals the district court's judgment affirming the bankruptcy court's order overruling the Trustee's objection to the exemptions claimed by Appellees Mark Christian Schreiber and Deborah Jean Schreiber, two Chapter 7 debtors.  We have jurisdiction under 28 U.S.C. § 158(d)(1) and affirm.

I

The Schreibers resided in the state of Kansas before moving to Arizona.  When they filed for Chapter 7 protection in Arizona, they claimed the federal exemptions under 11 U.S.C. § 522(d).  The Trustee objected, contending that the Schreibers must use the Kansas exemptions.  The bankruptcy court overruled the objection and held that the Schreibers could elect the federal exemptions.  The district court affirmed.

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), Congress revised 11 U.S.C. § 522(b)(3)(A) to tighten the bankruptcy domiciliary requirement, and, in turn, restrict the exemptions that a debtor can use when relocating the debtor's domiciliary from one state to another.  Recognizing that the effect of this stricter domiciliary

_____

[**]    The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

requirement might render a debtor ineligible for any exemption, BAPCPA enacted the so-called "hanging paragraph" of § 522(b)(3), which provides: "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)."

The Schreibers maintain that they are entitled to claim the exemptions specified under subsection (d)—i.e., the federal exemptions—because they have been rendered ineligible for at least one Kansas exemption. The Trustee contends that the Schreibers are still theoretically eligible for some Kansas exemptions, so the hanging paragraph does not afford them the option of electing the federal exemptions.

## II

We review the district court's decision *de novo*, and we review the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002).

1. To decide this appeal, we interpret the hanging paragraph to apply when § 522(b)(3)(A)'s domiciliary requirement renders a debtor ineligible for all state law exemptions for which the debtor would otherwise be eligible given the debtor's actual

circumstances and assets.[1] This is distinguishable from a case in which a debtor can theoretically claim one or more exemptions (e.g., because the exemption is not limited to resident debtors).[2]

2. Applied to this case, this interpretation of the hanging paragraph means that the Trustee was obligated to prove that the domiciliary requirement under subparagraph (A) does *not* have the effect of rendering the Schreibers ineligible for all Kansas exemptions that they would otherwise be eligible for given their actual circumstances and assets. *See In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) ("Once an exemption has been claimed, it is the objecting party's burden (the trustee

---

[1] The meaning of the term "any" in the hanging paragraph is the subject of disagreement in the bankruptcy courts. Some hold that a debtor may claim the federal exemptions pursuant to the hanging paragraph only if the debtor is entirely ineligible for all state exemptions due to the domiciliary requirements of § 522(b)(3)(A); others permit a debtor to invoke the hanging paragraph if the debtor is rendered ineligible for some, but not all, state exemptions. *Compare In re Wilson*, No. 14-20557, 2015 WL 1850919, at *4 (Bankr. D. Idaho Jan. 13, 2015), *with In re Goldstein*, No. 20-20406, 2021 WL 5443542, at *9 (Bankr. D. Me. Nov. 19, 2021). For purposes of this appeal, we need decide only that the Trustee's interpretation of the hanging paragraph, which is more restrictive than any interpretation endorsed by a bankruptcy court, is incorrect. Accordingly, we need not, and do not, decide among other competing interpretations of the hanging paragraph.

[2] The bankruptcy court found that "[t]he two items on the laundry list of exemptions that the Trustee states are available to the Debtors are not factually applicable in this case. The Debtors are not innkeepers in Kansas . . . and the Debtors are not members of the Kansas National Guard . . . ." Therefore, it found "that the facts of this case are such that these Debtors would not be able to claim these exemptions."

- 4 -

in this case) to prove that the exemption is not properly claimed." (citing Fed. R. Bankr. P. 4003(c))).

3. The bankruptcy court did not err in holding that the Schreibers were ineligible for all Kansas personal property exemptions that they would otherwise have been eligible for given their actual circumstances and assets.

4. The bankruptcy court did not err in holding that, in addition to their inability to claim all personal property exemptions for which they would otherwise have been eligible given their actual circumstances and assets, the Schreibers could not claim a homestead exemption under Kansas law for their mobile home located in Arizona. The Kansas homestead exemption does not have extraterritorial effect. *See In re Ginther*, 282 B.R. 16, 19 (Bankr. D. Kan. 2002) ("While Kansas case law does not address this specific question, the Kansas Supreme Court has several times held that state law, and in particular, state exemption law, is without effect beyond the territorial boundaries of the state." (citing *State v. Holcomb*, 116 P. 251, 252 (1911))).

**AFFIRMED**.

*MacKenzie v. Schreiber*, No. 21-16028

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the Court's holding that the Schreibers are ineligible for Kansas's personal property exemptions. However, I would certify the issue of whether they can claim the Kansas homestead exemption to the Supreme Court of Kansas because state authorities seem to point in two directions and because the homestead exemption codifies a protection enshrined in the Kansas constitution, making this issue an important state matter. *See* K.S.A. § 60-3201.

I

Neither of the two Kansas Supreme Court cases discussed by the parties is exactly on point. In *Burlington & M.R.R. v. Thompson*, decided in 1884, the plaintiff sued a corporation operating a railroad running from Nebraska to Kansas seeking to garnish the wages of its employee, a Nebraska resident. 1 P. 622, 623 (Kan. 1884). Under Nebraska law, wages were exempt from garnishment. *Id.* The question was whether those exemptions applied in a lawsuit brought in Kansas. *Id.* The state Supreme Court decided that they did not. *Id.* In so holding, it relied heavily on the principle that "[t]he laws of a state have no extraterritorial force." *Id.* It noted that this principle also covers "exemption[s]." *Id. Burlington*, therefore, stands for the proposition that exemptions of other states are irrelevant in a suit brought in Kansas.

In turn, *State v. Holcomb*, while mentioning the extraterritoriality principle, mostly relied on the canon that tax exemptions are to be read narrowly. 116 P. 251 (Kan. 1911). The municipality of Kansas City, Missouri operated a waterworks plant located in Wyandotte county, Kansas. *Id.* Under Kansas's constitution, "all property used exclusively for . . . municipal . . . purpose . . . [is] exempted from taxation." *Id.* at 252. Based on this provision, the municipality argued that its plant too was exempt. *Id.* at 251. The Kansas Supreme Court disagreed. It concluded that the tax break did not apply because Kansas City was a municipality in Missouri, not Kansas. *Id.* Although the Court briefly mentioned the rule that "laws have no extraterritorial force," the main thrust of the opinion was that the tax exclusion was to be read narrowly and only applicable to Kansas municipalities. *Id.* at 252. The principle underlying the exemption, the Court held, was that taxing its own municipalities "would amount to no more than taking money from one pocket and putting it in another." *Id.* at 251.

Relying on the extraterritoriality canon mentioned in these opinions, two lower federal courts concluded that Kansas's homestead exemption does not apply to property located outside the state. Ordinarily, the homestead exemption extends to the proceeds of the sale of a homestead if the debtor intends to invest such proceeds in another home. *See, e.g.*, *First National Bank v. Dempsey*, 11 P.2d 735, 737 (Kan. 1932). However, relying on *Burlington*, the Kansas district court held

2

"that proceeds of . . . sale of *Michigan homestead* could not be exempt under Kansas homestead statute even if debtor intended to use proceeds to purchase a Kansas homestead." *In re Sipka*, 149 B.R. 181, 182–83 (D. Kan. 1992) (emphasis added). Similarly, relying on *Holcomb* and *Burlington*, the bankruptcy court for the district of Kansas concluded that the debtor cannot exempt the proceeds from the sale of a Kansas homestead when he intends to use those proceeds to purchase a home in Colorado. *In re Ginther*, 282 B.R. 16, 19–20 (Bankr. D. Kan. 2002). Both cases note that there is no Kansas decision that directly addresses the issue. *Id.* at 19 ("Kansas case law does not address this specific question."); *In re Sipka*, 282 B.R. at 182 ("Our research discloses no Kansas case that has directly addressed this issue.").

*In re Sipka* and *In re Ginther* are not binding on this Court and their applications of *Holcomb* and *Burlington* are not ironclad. The opinions were issued by district and bankruptcy courts, respectively. While deserving of careful consideration, they are in no way binding on us. Further, as discussed, *Holcomb* reaches its conclusion based mostly on the canon that tax exemptions are to be narrowly construed. In addition, the property in that case was in Kansas. Thus, that decision has little import on whether the homestead exemption applies to property located elsewhere. *Burlington* is more on point, but it discusses the application of exemptions of other states in a suit brought in Kansas, not whether Kansas law can be applied outside the state.

In addition to a lack of clear command from state courts, Kansas statutes imply that the homestead exemption *does* apply extraterritorially. K.S.A. § 60-2309 provides that "[w]ages earned out of this state and payable out of this state shall be exempt from attachment or garnishment in all cases where the cause of action arose out of this state . . . ." In this statute, the Kansas legislature explicitly exempted an out-of-state property, albeit not a physical one, in direct contradiction to the extraterritoriality canon. Although the argument can be made that § 60-2309 deals with movable property while § 60-2301 covers the typically fixed homesteads, this distinction makes little difference since the later section also covers "mobile home[s]"—the type of home that the Schreibers happen to own.

Further, the legislature explicitly limited only some exemptions to Kansas residents. For example, K.S.A § 60-2304 (personal property exemptions) and K.S.A. § 60-2313 (exemptions from legal process) only apply to "person[s] residing in this state." In contrast, the homestead exemption does not contain such a limitation. *In re Ginther*, 282 B.R. at 19. Just as applications of exemptions to property outside the state, applications of exemptions to nonresidents are extraterritorial. Thus, since the legislature felt the need to limit explicitly the application of some exemptions but not of the homestead exemption, it is possible that an extraterritorial reach was contemplated.

Finally, *Chambers v. Cox*, decided in 1880, adds to the ambiguity by holding that the rights of nonresidents are protected by the homestead exemption. 23 Kan. 393, 395 (1880). It interpreted Art. 15, § 9 of the Kansas constitution, which was codified almost verbatim in the statutory exemption at issue in this appeal. *Compare* Kan. Const. art. XV, § 9, *with* K.S.A. § 60-2301. In that case, the husband of a woman "who had never been an actual resident of Kansas" transferred the title in his homestead to the buyer without his wife's consent. *Cox*, 23 Kan. at 394. The Court started from the proposition that had the wife been a resident, there would be no question that the deed was invalid, as the constitution requires the consent of both spouses for alienation. *Id.* It then concluded that the fact that the wife had never been a resident of the state does not dispense with the mutual consent requirement. *Id.* at 395. The Court, thus, refused to read-in a condition that both spouses be "residents of the state" for the protection to apply. *Id.* Therefore, *Cox* suggests that a Kansas court could read the statutory homestead exemption to protect extraterritorially property outside the state.

Because Kansas caselaw and statutory scheme do not clearly resolve the question of whether the homestead exemption applies extraterritorially, I would certify this important issue to the Kansas Supreme Court. The homestead exemption is paramount to the state. It has been enshrined in its constitution, Kan. Const. art. XV, § 9, and serves the important role of protecting "the family of the debtor." *Iowa*

5

*Mut. Ins. Co. v. Parr*, 370 P.2d 400, 404 (1962). Taking an *Erie* guess, thus, "prevent[s] the informed evolution of state policy by state tribunals." *Moore v. Sims*, 442 U.S. 415, 430 (1979).

## II

In sum, we correctly affirm the district court on the Kansas personal property exemptions, but we should have certified the homestead exemption issue to the Kansas Supreme Court.